No. 2584.

ELIZABETH B. VOORHIES ET AL. v. MAYOR, ETC., OF THE
CITY OF HOUSTON.

1. CITIES AND TOWNS—TAXATION.—Though the charter of a city in force
when the present Constitution was adopted limited its taxing power to
the collection of taxes not to exceed two and a half per cent ad valorem,
the city may, without further legislative authority, levy and collect two
and a half per cent ad valorem when the same may be necessary to
pay the interest and provide a sinking fund to satisfy indebtedness
existing when the present Constitution was adopted.

2. TAXATION—CONSTITUTION CONSTRUED.—The subjects to which sec-
tions 5 and 6 of article 11 of the State Constitution refer being different,
the limitations found in section 5 do not apply to section 6, which
declares the limitation that shall be applied to that which from the
nature of the subject can not be limited by a given per cent ad valorem
tax.

3. SAME.—To give effect to sections 5 and 6, of article 11 of the Constitu-
tion, the former must be held to regulate taxation to raise money for
current expenses, and to meet further indebtedness, which, under the
Constitution may be created, and in no manner to operate as a limita-
tion on the power of the taxation conferred by section 6, article 11,
which relates to only such taxation as is necessary to raise means to
pay municipal debts existing at the time the Constitution was adopted.
If it be necessary to levy a tax exceeding two and a half per cent ad
valorem in order to raise funds to pay debts of a city which were
created before the Constitution was adopted, the power exists under
section 6, of article 11, of the Constitution; and this, though the charter
was granted before the adoption of the Constitution limited the
power of the city to two per cent per annum. This power must be ex-
ercised by the city whenever demanded by the holder of a claim entitled
to be paid by such tax.

4. SAME—MANDAMUS.—The power conferred on a city by section 6, article
11, of the Constitution, is not a discretionary power, but was conferred
to secure the rights of creditors, and must be exercised when necessary
for their protection; if not to raise a pro rata to be distributed among
many, equally meritorious, but a tax should be collected sufficient to
pay all. To compel the exercise of this power, a complaining creditor is
entitled to a writ of mandamus to compel the levy and collection of a
sufficient tax to satisfy his debt. See opinion for facts and form of
judgment rendered thereon in favor of such creditor.

APPEAL from Harris. Tried below before the Hon. James
Masterson.

*W. C. Oliver*, for appellant: That the taxing power was not limited by charter, cited Constitution, article 11, section 6.

That plaintiff's rights were not limited to a pro rata, he cited High's Extraordinary Legal Remedies, sec. 474; Cullem v. Latimer, 4 Texas, 330; Fitzhugh v. Custer, 4 Texas, 391; Bailey's Onus Probandi and Preparation for Trial, 435; High's Extraordinary Legal Remedies, 468, 473, 474.

That plaintiff was entitled to the writ of mandamus, he cited Revised Statutes, articles 1226 and 1265; 5 Sayles's Texas Civil Statutes, article 1262, and authorities cited.

*Hutcheson, Carrington & Sears*, for appellee: The city of Houston can not levy exceeding two per cent per annum for all purposes, and the appellant has exercised fully its powers of taxation. The charter limit has always been two per cent, and there is no other limit prescribed, and that limit can not be exceeded. (Sutherland v. DeLeon, 1 Texas, 250; Cooley's Con. Lim., pp. 36, 61, 65; Warren v. Shuman, 5 Texas, 457; see Const., article 3, sec. 43, wherein existing laws are recognized and ordered to be revised; State Constitution, art. 16, sec. 48; Grigsby v. Peak, 57 Texas, 142; Rees v. Watertown, 19 Wallace, 121; Cooley's Con. Lim., 285.)

Section 6, article 11, did not address itself to the question of the limit of taxation; that had been provided for in section 5, just preceding, and to give it the interpretation contended for would contravene the policy of our government and of the instrument itself, of prescribing a limit beyond which taxation should not go, and make section 5, just preceding, inoperative or conflicting, and that being a special provision regarding cities of over ten thousand inhabitants must control, even if there were such conflict. (Lufkin v. City of Galveston, 63 Texas, 439; Brown v. Waxahachie, 67 Texas, 521; Cannon v. Vaughan, 12 Texas, 402.)

That appellant was entitled only to a pro rata, they cited United States v. Macon County, 99 United States, 585; Sibly v. Mobile, 3 Wood's Circuit Court Reports, 541.

That plaintiff was not entitled to a mandamus, they cited Cullem v. Latimer, 4 Texas, 329; High's Extraordinary Remedies, section 5450; Story's Equity Pleading, sections 105, 106, 135 and note sections 89, 148 and 151; Ship Channel v. Bruly, 45 Texas, 6.

The appellee, by the conflicting claims and adjudications, had a judicial and not a ministerial duty, and could not be mandamused beyond paying a pro rata. (Commissioner v. Smith, 5 Texas, 479; Bledsoe v. International & Great Northern Railroad Company, 40 Texas, 557.)

The answer and evidence showed no right to mandamus against the defendant; that they had discharged their entire duty; that they had assessed the tax and done all they could to have it collected, and what had been collected was appropriated by decrees of court against their consent and beyond their control, and that the most which could be done was to mandamus the collector, who was not a party to the proceeding. (Ex parte Railroad, 104 United States, 604; High on Ex. Rem., sec. 442; Labatt v. Molton, 112 United States, 217; State v. Perine, 34 New Jersey, 254.)

The Constitution, section 5, article 11, expressly provides for legislative action to entitle any city to levy two and one-half per cent, and such action has never been had, and until had, the charter of the city is the only law applicable. (Lufkin v. Galveston, 63 Texas, 440; State Constitution, art. 16, sec. 48; Jennings v. Jackson, 113 United States, 332; Rees v. Watertown, 19 Wallace, 121; Cooley's Con. Lim., 285.)

STAYTON, CHIEF JUSTICE. This action was brought by appellants to revive a judgment for thirteen thousand six hundred and thirty-nine dollars and sixty cents, interest and costs, rendered in their favor against the appellee in the district court for Harris county, on November 29, 1881. They also seek a writ of mandamus to enforce the payment of the judgment to be recovered. The judgment which appellants seek to revive and enforce was rendered on past due coupons for interest due on bonds executed July 1, 1876, in pursuance of an ordinance passed December 10, 1875, which was approved by an act of the Legislature passed May 30, 1876.

At the time the ordinance referred to was passed, the appellee had a large outstanding indebtedness, and the purpose of the ordinance was to consolidate this by taking up the outstanding bonds with bonds authorized by the ordinance to issue. The bonded debts of the city, known as the "market house" and "ship channel" bonds, were not included in the outstanding debts which might be replaced by the bonds authorized by the ordinance to issue. The appellants obtained

the judgment which they seek to revive and enforce, on coupons to bonds issued under the ordinance referred to in lieu of bonded indebtedness existing before the ordinance was passed.

The ordinance provided "that one per cent on the assessment of the ad valorem taxes of the city shall, and the same is hereby set apart annually, and specially reserved for the purpose of paying the interest and creating a sinking fund for the redemption of the bonds provided for in this ordinance, and before their maturity." The ordinance further provided, that any sum in excess of that necessary to meet interest should create a sinking fund for the redemption of the bonds to be issued, which might be invested whenever there was as much as five thousand dollars on hand, in the purchase of bonds of that issue.

The ordinance was expressly made a part of the contract with all persons who should accept bonds authorized by it to issue. Nothing had been paid on the judgment sought to be secured, although the tax of one per cent was duly levied for the years 1879, 1880, 1881, 1882, 1883 and 1884, and of this there was outstanding and uncollected the sum of one hundred and twelve thousand six hundred and eighty-six dollars. The same tax seems to have been levied for subsequent years. There are past due coupons on the same series of bonds held by appellants, amounting to three hundred and fifty thousand dollars.

It is admitted that the sum to be raised by the one per cent tax authorized by the ordinance is insufficient to pay the interest annually on the series of bonds of which appellants' are a part. The city levies the one per cent tax and applies the proceeds, so far as collected, pro rata upon all its bonded indebtedness, of which there is other than that evidenced by the series of bonds issued under the ordinance before referred to. The only other ad valorem tax levied by the city is a tax of one per cent which it levies and applies to its current expenses that can not be met through a less tax.

It is shown that the city has no means of paying its bonded indebtedness otherwise than through an ad valorem tax, and that it refuses to levy such a tax, for all purposes, in excess of two per cent. The petition prayed for a judgment for the sum due on the former judgment, and for a writ of mandamus commanding the municipal corporation to collect the uncollected taxes at once, so far as the same can be done, and out of the collections so made to pay the judgment to be

rendered, with interest and costs; and in case enough of taxes uncollected can not be collected to satisfy the judgment, that it be commanded forthwith to levy and collect upon property within the city, subject to an ad valorem tax, sufficient to pay the judgment in full.

After entering a judgment in favor of appellants for the sum due them on the former judgment, the judgment proceeds as follows:

"It further appearing to the court that, at the time of the issuance of the series of bonds, on part of which series this suit is brought, the charter of defendant limited its taxing power to two per cent per annum, and does now so limit it; and it further appearing that said defendant has levied taxes to said limit, the mandamus requiring defendant to levy a special tax sufficient to pay said judgment, interests and costs is hereby denied.

"And it appearing to the court that there remain uncollected under the levies of one per cent laid for series of bonds, of which plaintiffs' are a part, for the several years 1879, 1880, 1881, 1882, 1883 and 1884, amounting in the aggregate to the sum of one hundred and twelve thousand six hundred and eighty dollars are due and uncollected on account of bond tax, and that plaintiffs' judgment herein of eighteen thousand one hundred and forty-four dollars is entitled to share pro rata with three hundred and fifty thousand dollars of like series of past due coupons. The court here now orders, decrees and directs that said defendant pay at once to said plaintiffs, or their attorney of record, the sum of five thousand eight hundred and forty-one dollars and sixty-six cents, being said pro rata, and all costs of suit, out of the first moneys collected on account of said tax levies of bond tax for said years 1879, 1880, 1881, 1882, 1883 and 1884, after payment of the judgment this day rendered in cause No. 12,044 in favor of Luther C. Voorhies v. The Mayor, etc., of Houston, the payment of which is hereby decreed to have priority over this judgment."

No question exists as to the validity of the debt the appellants seek to enforce, nor of the inability of the appellee to pay the interest on the series of bonds of which the appellants hold a part, with the interest on its other bonded indebtedness, from a tax of one per cent on the property within the city subject to an ad valorem tax.

The first assignment of error is: "The court erred in holding that the charter of the city of Houston (defendant herein) limited the taxing power of defendant to two per centum per annum ad valorem of the assessed value of the property of said defendant, the debt for which an additional tax levy was sought having been contracted before the adoption of the Constitution now in force, because the Constitution of the State of Texas, article 11, section 6, provides: 'That counties, cities and towns are authorized, in such manner as now or may hereafter be provided by law, to levy, assess and collect the taxes necessary to pay the interest and provide a sinking fund to satisfy any indebtedness heretofore legally made and undertaken; but such taxes shall be assessed and collected separately from that levied, assessed and collected for current expenses of municipal government, and shall, when levied, specify in the act of levying the purposes therefor; and such taxes may be paid in the coupons, bonds or other indebtedness, for payment of which such tax may have been levied.'"

The city of Houston was chartered by a special act passed August 2, 1870, and that provides that it "may assess and collect annual and direct tax upon all property, real and personal, situated and being within the limits of the corporation, not exceeding two per cent ad valorem." It is contended that this fixes the power of the city, and limits it to the assessment of a tax of two per cent, beyond which it can not go without further legislative authorization, and furthermore, that for no purpose whatever could the Legislature legally authorize it to levy a tax exceeding two and one-half per cent. This is based on section 5, article 11, of the Constitution, which provides that "cities having more than ten thousand inhabitants may have their charters granted or amended by special act of the Legislature, and may levy, assess and collect such taxes as may be authorized by law, but no tax for any purpose shall ever be lawful, for any one one year, which shall exceed two and one-half per cent of the taxable property of such city; and no debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon, and create a sinking fund of at least two per cent thereon."

It may be that a city, such as is contemplated by this article, whose charter places a limit on the amount of tax it may levy, could not exceed this, and levy to the extent of two and one-

half per cent for the purposes contemplated by that article without some further authorization by law to do so. That such authority might be given by a general law passed by the Legislature, and applicable to that class of cities, would not be questioned. A law of that character would become, in effect, a part of the charter of every city to which it was applicable. If such a power be given in particular cases by the Constitution itself, then such cities may exercise it without any act of the Legislature, although under a charter in force when the Constitution was passed the rate of maximum taxation was fixed at less than two and one-half per cent. Section 6, article 11, copied in the assignment of error, expressly *authorizes* all counties, cities and towns "to levy, assess and collect the taxes *necessary* to pay the interest and provide a sinking fund to *satisfy* any indebtedness heretofore legally made and undertaken." If the limitation on taxation found in section 5, article 11, has any application to the succeeding section, even then it is very clear that under the latter, without further authorization, any county, city or town, for the purpose mentioned, might levy a tax not exceeding two and one-half per cent if this was necessary to pay interest and create a sinking fund to satisfy a debt legally contracted before the adoption of the Constitution; and so, although the charter of such city or town, enacted before the adoption of the Constitution, placed a limit on its power within the sum necessary to be levied and collected for the purpose mentioned. What we have said of section 6, article 11, is true of section 7 of the same article.

If, then, a tax of two and one-half per cent would be sufficient to enable the city of Houston to meet the interest and create a sinking fund to satisfy its indebtedness legally created, before the adoption of the Constitution, there can be no doubt of its power to levy to this extent if necessary. That the debt which the appellant seeks to have paid is one within the meaning of the Constitution, "heretofore legally made and undertaken," we do not doubt.

In the state of the record before us, we can not undertake to determine whether a tax of two and one-half per cent, with other taxes authorized to be levied and collected, will be sufficient to pay the current expenses of the city and meet the interest and principal of its bonded indebtedness. The inquiry then arises whether the limit of taxation imposed by section 5 has application to section 6. The one, taken literally, proposes

to place a limit on taxation which such cities as are contemplated by it may levy and collect for any purpose whatsoever, but within this are included taxes to raise money to meet current expenses, as well as to raise money to pay interest on and discharge such debts as the municipal government might contract after the adoption of the Constitution. The other relates exclusively to debts legally made and undertaken before the Constitution was adopted, and provides how the money necessary to discharge them, with interest accruing, shall be raised. This section also contains a limitation on the taxing power not determined, however, by a named per centum, but by a sum *necessary to pay and satisfy* any indebtedness, including principal and interest, legally existing at the time the constitution was adopted.

A sum *necessary to pay* and *satisfy* a debt, is necessarily a sum *sufficient* to pay such debt. It also recognizes the fact that the preceding sections had provided for the levy of taxes to meet current expenses, as does the preceding section evidence that debts to be created in the future must be provided for under the limitation contained in it.

The declaration of the purpose for which taxes might be levied, under section 6, together with the fixing of a limitation on the exercise of this power, limited only by the sum sufficient, in the given case, to pay the class of indebtedness to which it relates, evidences that it was not thought. by the framers of the Constitution, that a means for paying the debts of counties, cities and towns, outstanding at the time the Constitution was adopted, had been provided in any other part of the Constitution; for had this been done, or thought to have been done, section 6 would never have been inserted; for in such case, its only effect would be to declare that a county city or town, might pay a valid past indebtedness. Such a declaration in a Constitution would be as unusual as unnecessary, and but the assertion of an intention not to destroy existing contracts. It is not to be presumed that any part of the Constitution was not deemed necessary or intended not to have effect; nor that one part was intended to defeat the operation of another; but, on the contrary, that it was intended effect should be given every part of it. Where there may be a seeming conflict it is the duty of the court to ascertain the true intention and to give effect to it.

The subjects to which sections 5 and 6, article 11, relate, seem to be different and must be deemed so, as one of them relates to taxation generally, and necessarily embraces the subject of municipal taxation for the purpose of raising funds to meet current municipal expenses, and to pay debts to be incurred after the adoption of the Constitution, while the other only provides for taxation to raise funds to meet indebtedness existing when the Constitution was adopted. This being so, no violence is done to the Constitution in refusing to apply the limitation found in section 5 to the subject of section 6, which declares the limitation that shall be applied to that which from the nature of the subject could not be limited by a given per cent of ad valorem tax.

If the construction contended for by the appellee were adopted, the Constitution might in some cases render impossible the legal exercise of the power expressly given by section 6, article 11, and thus the obligation of contracts be impaired, in violation of the Constitution of the United States, which operates upon State constitutions as well as acts of the Legislature. (Hoffman v. City of Quincy, 4 Wall., 535; Gunn v. Barry, 15 Wall., 611; United States v. Jefferson County, 7 Central Law Journal, 130.)

The contention in this case illustrates the difficulties that might grow out of the construction contended for, and it will not be presumed that it was intended to be placed in the Constitution a provision which might lead to such results. Section 4, article 11, of the Constitution provided for the levy and collection of taxes to meet the current expenses of cities and towns having a population of less than ten thousand inhabitants, and placed on this a limit, but it made no provision for debts of such cities and towns created before the adoption of the Constitution and then existing. Such debts, however, were provided for by section 6, article 11, as well as by section 9, article 8, and by the amendment made thereto and adopted August 14, 1883. This again but illustrates the fact that the constitutional provisions in reference to taxation for municipal current expenses and future indebtedness was throughout kept separate from the provisions conferring power and regulating the mode in which such indebtedness existing at the time the Constitution was adopted should be paid.

Throughout, in the one case, the limit of taxation was absolutely determined by a fixed rate that could not be exceeded;

while in the other the limit was measured only by the amount of the existing debt. To give effect to sections 5 and 6 of article 11, the former must be held to regulate taxation to raise money for current expenses and to meet future indebtedness which, under the Constitution, may be created; and in no manner to operate as a limitation on the power of taxation conferred by section 6, which relates only to such taxation as is necessary to raise means to pay municipal debts existing at the time the Constitution was adopted. If the tax necessary to be levied to meet the current expenses of the city, and pay the interest and provide a sinking fund to satisfy its bonded indebtedness, will not exceed a tax of two and one-half per cent, then there can be no claim that the maximum of tax provided by section 5 may not be levied when it becomes necessary to do so to pay debts existing at the time the Constitution now in force was adopted, if section 5 be applicable under the authorization given by section 6, notwithstanding the charter of the city does not provide for the levy and collection of taxes exceeding two per cent.

We are further of the opinion if it be necessary to levy a tax exceeding two and one-half per cent, in order to raise funds to pay such debts, that section 6, of article 11, gives the power to do this.

We are further of the opinion that the power conferred by the section last mentioned must be exercised by a county, city or town whenever called upon to do so by one holding a claim that he is entitled to have paid through taxation authorized by it. The power thus conferred is not one which a municipal corporation may or not use in its discretion, but one given to secure rights to individuals, which it must exercise whenever it becomes necessary to do so for the protection of such rights. (Supervisors v. United States, 4 Wall., 446), and on failure to do so it becomes the plain duty of the courts to compel the exercise of the power.

The other assignments of error relate to the ruling of the court below, holding that the appellant was entitled only to a pro rata of the uncollected taxes. The grounds upon which a creditor should be restricted to a pro rata payment, we are of opinion, do not exist in this case. If there be a fund to which more than one creditor is compelled to look as the only source from which their claims can be paid, and this be insufficient to

pay all in full, then it is manifestly just, none of the claims having a preference, that the fund should be distributed pro rata.

When, however, there is a means through which all the creditors may be paid in full the reason for directing a pro rata payment does not exist; and that one creditor by the exercise of a higher degree of diligence than exercised by another, may secure payment at an earlier day than does the other, furnishes no reason why such other creditor, much less the debtor, should be heard to complain because a pro rata payment was not directed.

As we have already seen, the city has power to levy such taxes as are necessary to satisfy every debt legally made and undertaken, existing at the time the present Constitution was adopted, and there can be no pretence of its want of ability thus to raise means sufficient to pay in full every debt of that character.

The fact that there are more uncollected taxes does not give to other creditors, not before the court, any right to a part of the particular fund to be realized from their collection; and especially so, when it appears that the uncollected taxes were not levied for the benefit of any particular creditors or class of creditors, but for creditors generally who held parts of the bonded indetedness of the city. If, however, other creditors could be heard to object to the payment in full of the claim of appellant out of the fund to be realized from the taxes now uncollected, the appellee can not be heard to insist that the court below ought not to have directed other than a pro rata payment to be made to the appellants. There is no difference, in this respect, between taxes levied and uncollected and taxes that may be levied hereafter.

In City of Galena v. Amy, 5 Wallace, 709, which was a case much like the present, the peremptory writ of mandamus had issued in favor of a creditor, and it was insisted before the Supreme Court of the United States, by the city, that it was error not to direct the taxes directed to be collected to be distributed among all the creditors holding similar claims. In that case the court said: "It is insisted that the city owes a large amount of other debts, and, if these taxes are collected, the other creditors will be entitled to share in the distribution of the proceeds. It is not competent for the respondents to make this objection. When any other creditor complains, in a

proper proceeding, and asks that the funds be marshalled, it. will be time enough to consider the subject."

After rendering a judgment in favor of the appellants for the sum due them, a peremptory writ of mandamus should have been awarded, commanding the appellee and all of its officers charged with the duty of levying, assessing and collecting taxes, and disbursing funds received therefrom, at once to collect the uncollected taxes levied to meet the interest and create a sinking fund to satisfy its bonded indebtedness, and out of the funds so collected to pay the judgment in favor of appellants, with all interest and costs due thereon, next after the judgment in favor of Luther C. Voorhies, named in the judgment, was satisfied; and, in the event the judgment was not paid, from sums so to be collected, within ninety days from the service of the writ, that then the appellee should levy, cause to be assessed and collected a tax on all property, real and personal, within the city and subject to taxation, sufficient to satisfy the judgment, which should be collected as soon as the mode provided by law will permit; and the money, when collected, to be applied at once to the payment of the judgment, interest and costs.

Procedure by individual creditors for the collection of sepa rate claims must necessarily be harrassing and attended with unnecessary expense, but the courts have no power to deny relief to any one entitled to it; and, if the city desires to avoid such annoyance, it may do so by collecting a sufficient sum to meet the present claims of creditors and paying them, and by pursuing a like course in the future.

The record illustrates the embarrassments under which the appellee labors, and its heavy weight of debt; but this was voluntarily contracted, and when called upon to enforce its payment the courts have a simple duty to perform, from which seeming hardships can not be permitted to divert them.

The judgment of the court below will be reversed and the cause remanded, with instructions to that court to enter such a judgment as is above indicated should have been rendered. It is further directed that the court make inquiry as to who fill the several offices that will be charged with the doing of the several acts commanded to be performed, and that its writs be directed to and served upon such persons, as well as upon the municipal corporation.

It is so ordered.                    *Reversed and remanded.*