STATE *ex rel.* T. V. BUCKWALTER, *et al.* v. CITY OF LAKE-LAND *et al.*

150 So. 508.
Division B.
Opinion Filed October 3, 1933.

A case of original jurisdiction—mandamus.

*L'Engle & Shands* and *F. P. Fleming* for Relators;

*Peterson, Carver & Langston* for Respondents.

BUFORD, J.—The Relators filed petition for alternative writ of mandamus which issued.

The allegations of the alternative writ show in effect that the City of Lakeland under its several charters between February 1st, 1904, and July 1st, 1932, issued a large number of bonds for various municipal purposes; that the bonds issued after October 1st, 1927, were all refunding bonds; that a part of the indebtedness had been paid off but that at the time of the filing of the petition there remained outstanding bonds in the principal sum of $8,700,000.00 on which accrued and unpaid interest amounted approximately to $215,000.00 and interest is accruing at the rate of about $500,000.00 per annum.

The record shows that the City Commission on September 6th, 1932, enacted the necessary ordinance for the fiscal year beginning September 1st, 1932, and by such ordinance there was appropriated for interest on certain sewer bonds which would fall due prior to September 1st, 1933, the aggregate sum of $53,240.00; that there had been collected by the City of this sum something more than $10,000.00 of which the City had on hand at the time of the institution of this suit $8,260.00; that the Relator is the owner and holder of 96 interest coupons evidencing the interest upon the sewer bonds above referred to, maturing June 1st, 1933, and for the payment of which interest the aforementioned tax was levied and collected.

It is alleged that the sum on hand in this fund is more than sufficient to pay off and discharge the 96 interest coupons held by the Relator.

It is shown that other interest coupons are outstanding and unpaid and that there is not a sufficient fund on hand as result of assessment and collection of the tax aforesaid to

pay all the interest coupons which have matured on or will mature on or before September 1st, 1933.

The Respondent pleads the Act of the Legislature at the regular session of 1933, known as Senate Bill No. 63, which was approved and became a law on May 29th, 1933.

Section 1 of that Act provides:

"SECTION 1. In any mandamus suit brought by the owner or holder of past due bonds or interest coupons, in any court of this State, seeking to complete payment thereof from money actually on hand in the interest and sinking fund, the peremptory writ, if issued by the court, shall command the respondents to pay to relator only such pro rata portion of the moneys actually on hand in the interest and sinking fund as the relator's amount of past due bonds or interest coupons bear to the whole amount of past due bonds or interest coupons then unpaid and outstanding. This Act shall not apply to the bonds, contracts or other obligations of governmental units, issued or incurred after the passage of this Act. If any word, sentence, clause, section or provision of this Act shall be held to be unconstitutional it will not affect the remainder of this Act."

The defense is made by way of motion to strike and demurrer to the alternative writ.

There are two questions presented by the pleadings. One question is whether or not the Act of the Legislature above referred to is valid and the other is, whether or not under the ordinance of the City of Lakeland authorizing the assessment and collection of the tax, the relator may have the relief prayed, even though the Legislative Act be held invalid. We think the second question presents no serious problem. The tax was levied under the ordinance for the purpose of paying the interest on the coupons here involved, together with other like coupons. And so it is, that unless

the city is relieved 'from the duty of paying relators' coupons in full when it has the money on hand under the proper fund sufficient to pay the same by the provisions of Senate Bill No. 63, it must be required to pay off and discharge these coupons in response to mandamus instituted for that 'purpose. The law applicable to the application of such funds, under such conditions, was clearly enunciated by this Court in the case of Gillespie *et al* v. Carlton *et al,* 103 Fla. 810, 138 Sou. 612, in which Mr. Justice DAVIS, speaking for this Court, said:

"To support relators' contentions in this respect, there appear to be many adjudicated cases which hold that the rule is that when a fund has accrued in the hands of a debtor which is insufficient to pay all bonds payable out of such fund, that one bond holder of the series for which the raising of such fund was pledged when the bonds were issued, may have his bonds ordered paid in full from the funds in his debtor's hands, even though the fund at the time of bringing suit is not sufficient to pay all the outstanding bonds then matured, it appearing that the funds in hand are accruals. from the exercise of an inexhaustible power of taxation, and that the whole fund required, of which the fund in hand is but a part, is replenishable by the further exercise of the inexhaustible taxing power, thereby enabling the debtor to ultimately pay all who may have claims against the fund as a whole." (Citing numerous authorities.)

Then we quoted, with approval, from the case of Voorhies v. City of Houston, 70 Tex. 331, 7 S. W. 679, in which it was said:

"If there be a fund to which more than one creditor is compelled to look as the only source from which their claims can be paid and this be insufficient to pay all in full,

then it is manifestly just, one of the claims having a preference, that the fund should be distributed *pro rata*. When, however, there is a means through which all the creditors may be paid in full, the reason for directing a *pro rata* payment does not exist, and that one creditor, by the exercise of a higher degree of diligence than exercised by another may secure payment at an earlier day than does the other, furnishes no reason why such creditor, much less the debtor, should be heard to complain because a *pro rata* payment was not directed. As we have seen, the City has power to levy such taxes as are necessary to satisfy every debt legally made and undertaken, existing at the time the present Constitution was adopted, and there can be no pretense of its want of ability to raise sufficient means to pay in full every debt of that character. The fact that there are some uncollected taxes does not give to other creditors not before the Court any right to a part of the particular fund to be realized from their collection, and especially so when it appears that the uncollected taxes were not levied for the benefit of any particular creditor, or class of creditors, but for creditors generally who held parts of the bonded indebtedness of the City. If, however, other creditors could be heard to object to the payment in full of the claim of appellant out of the fund to be realized from the taxes now uncollected, the appellee cannot be heard to insist that the Court below ought not to have directed other than a *pro rata* payment to be made to the appellants."

And we further said:

"With the foregoing statement of the law applicable to cases of mandamus against public officers to compel the disbursement of funds to petitioning bond holders out of the available sources of payment provided by law and contract for the satisfaction of the indebtedness they are at-

tempting to collect, this Court agrees. Not only is the doctrine stated amply supported by authority from Courts all over the United States, but it has the approval of the Supreme Court of the United States and of the Circuit Court of Appeals of the Fifth Circuit, which is the Circuit in which the State of Florida is located."

In State *ex rel.* DuPont Ball, Inc., v. Livingston, filed January 12, 1932, reported 139 Sou. 360, we said:

"The City of Homestead, Florida, had on hand certain funds applicable to payments of its bonded debt; the total of the moneys on hand was insufficient to pay a judgment which had been recovered against the City on some of its coupons and meet other demands payable out of the same fund, but which had not been reduced to judgment; in a contest between relator in mandamus seeking to enforce payment of the available funds on its judgment and a relator seeking to enforce application of the available funds to coupons payable out of the fund, but which had not been reduced to judgment, *held* that the character of the debt was not changed by the rendition of judgment on it, and that the claimants in mandamus would be entitled to priority of payment in the order in which the alternative writs of mandamus were served, where the available fund attempted to be reached by the writs was not sufficient to satisfy the demands of both relators."

So, the respondent must rely upon the validity of Senate Bill No. 63, while the relators contend that Senate Bill No. 63 is invalid because, first, it impairs the obligation of contact; second, it denies relators equal protection of the laws and, third, it divests the Supreme Court and the Circuit Courts of their constitutional jurisdiction to compel by mandamus the performance of official and legal duties.

Article V, Section 5, of the Constitution of Florida pro-

vides that the Supreme Court "shall have the power to issue writs, mandamus, certiorari, prohibition, quo warranto, habeas corpus and also all writs necessary or proper to the complete exercise of its jurisdiction."

Article V, Section 11, makes a similar grant of power to the Circuit Courts.

A writ of mandamus is a common-law writ used to coerce the performance of any and all official duties where the official charged by law with the performance of such duty refused or failed to perform the same; and when the Constitution vested in the circuit courts and Supreme Court of Florida the power and authority to issue writs of mandamus it vested therein full and complete authority to issue such writs to coerce and enforce the full and complete duty devolved by law upon any official to perform.

The provisions of Senate Bill No. 63 would curtail and limit the power of the courts to issue peremptory writs of mandamus and in such cases by its terms would reduce the power of the court to the coercion and enforcement of only a part of the legal duty devolving upon the respondents.

The statute has not attempted to change the law as to the duty of the officials and this Court has repeatedly held that it is the duty of the proper officitls in cases like the one here under consideration to pay from the fund on hand the full amount of the relator's claim as evidenced by the coupons.

In Brinson v. Tharin, 99 Fla. 696, 127 Sou. 313, when we were considering the validity of a legislative Act attempting to extend the scope of the writ of certiorari, and to limit the time in which it might be invoked, this Court speaking though Mr. Justice ELLIS, said:

"It is only the common law writ of certiorari which may be issued by this Court to review the proceedings of the

circuit court as an appellate court and as that power is secured by the Constitution in this Court it may not be extended, limited nor regulated by statute. We have seen that the attempt to give it the effect of a writ of error and transferring the appellate jurisdiction of the circuit court to this Court is futile. Second Weatherford case, *supra*. Likewise vain is the attempt to limit the issuing of a certiorari in the matter of time to a period within thirty days after the judgment of the circuit court. Palmer v. Johnson, 97 Fla. 479, 121 So. R. 466. The writ, confined to its legitimate scope, may issue within the court's discretion at any time to correct the procedure of courts wherein they have not observed those requirements of the law which are deemed to be essential to the administration of justice. It is important, however, that the court should not broaden or extend the scope of the writ.

"A judgment void for lack of jurisdiction or a proceeding characterized by a kind of tyranny in the failure to observe essential requirements should be subject to correction at the discretion of the court vested with the power to issue the writ. The writ is one which issues on discretion and not as a writ of right. Jacksonville T. & K. W. Ry. Co. v. Boy, 34 Fla. 389, 16 So. R. 290; Hunt v. City of Jacksonville, 34 Fla. 504, 16 So. R. 398; Holmberg v. Toomer, 78 Fla. 116, 82 So. R. 620; First National Bank of Gainesville v. Gibbs, *supra*.

"The common law writ of certiorari cannot be made to serve the purpose of an appellate proceeding in the nature of a writ of error. The writ involves a limited review of the proceedings of an inferior jurisdiction. It is original in the sense that the subject matter of the suit or proceeding which it brings before the court are not here reinvestigated, tried and determined upon the merits generally as upon ap-

peal at law or writ of error. Basnet v. City of Jacksonville, 18 Fla. 523."

In the case of Palmer v. Johnson, 97 Fla. 479, 121 Sou. 466, we said:

"If Laws 1925, Extra Sess., Chap. 11357, creating civil courts of record, vesting circuit courts with appellate jurisdiction and providing that petition for certiorari review in Supreme Court must be filed within thirty days after rendering of judgment by circuit court, was intended to circumscribe the Supreme Court's power, under Const., Art. V, Sec. 5, to review and quash, on common law certiorari, proceedings of inferior tribunals, at least where such proceedings were had without jurisdiction and where no appeal or direct mode of reviewing such proceedings exist, it would be ineffectual.

"If writ of error to civil court of record was so fatally defective as to render it ineffectual as a means of invoking circuit court's appellate jurisdiction, the Supreme Court could entertain petition for certiorari under Const. Art. 5, Sec. 5, and *quasi* judgment of circuit court in spite of fact that petition for certiorari was not filed within thirty days from rendition of such judgment, as required by Laws 1925, Extra. Sess., Chap. 11357."

In *Ex Parte* Beattie, 98 Fla. 785, 124 Sou. 273, we held that it is not competent for the legislature to change or modify the scope either of quo warranto or mandamus.

It may be said as a general rule that whatever power is conferred upon the courts by the Constitution cannot be enlarged or abridged by the Legislature. Robinson v. Durant, 36 Utah 63, 104 Pac. 764; 15 C. J. 731; in Re. Albori, 95 Cal. A. 42; 272 Pac. 321. This rule is also stated as follows: "The Legislature cannot lawfully interfere with the subsistence of the judicial power and discretion

vested in the courts by the Constitution nor hamper nor hinder the free and independent exercise thereof." See Safford v. Brevard County, 92 Fla. 617, 110 Sou. 451.

So it is, after considering the third objection to the validity of the legislative Act, we find that in effect it says that the circuit courts and Supreme Court of the State may issue alternative writs of mandamus to coerce and enforce the performance of the full legal duty devolved upon the proper authorities of a taxing unit to pay delinquent interest coupons, or delinquent bonds, from funds on hand acquired for that purpose but that such courts must ascertain the amount of the fund on hand and also ascertain the amount of the outstanding past due interest coupons or bonds for the payment of which the tax was assessed which produced that fund and thereupon shall be limited in the issuance of the peremptory writ of mandamus to coercing and requiring the payment to the relator only such pro rata of the fund on hand as the amount of the relator's coupons or bonds bears to the aggregate amount of all unpaid coupons, or bonds, for the payment of which the assessment was made by which the fund was produced. This is clearly contrary to the law hereinabove cited, being an attempt upon the part of the Legislature to interfere with the judicial power of the courts and to limit the scope of the writ of mandamus.

Next, we will consider the first ground of objection stated above, that is, that the statute impairs the obligation of contract.

It is well settled that mandamus is the only remedy available to one holding a liquidated obligation of a municipal corporation to enforce the payment of his claim. Humphries v. State, *ex rel.*, filed January 17, 1933, reported 145 Sou. 858; Columbia County v. King, 13 Fla. 451; State v. Vickers, *et al.*, not yet officially reported. It is also settled

in this jurisdiction that it is the duty of disbursing officials of municipalities to pay liquidated obligations of the municipality when presented if past due and funds are sufficient and available thereafter, even though there are insufficient funds to pay all matured obligations payable from the same fund, provided such obligations are payable from a "replenishable" as distinguished from a "closed" fund. State *ex rel.* v. Livingston, *supra;* State *ex rel.* v. Curry, filed February 16, 1932, reported 139 Sou. 891; State *ex rel.* v. Smith, filed May 2nd, 1932, reported 141 Sou. 318; State *ex rel.* v. Carlton, 103 *Fla.* 810, 138 Sou. 612.

In the case of Humphries v. State *ex rel., supra,* this Court, speaking through Mr. Chief Justice DAVIS, said:

"This Court has long since held that all the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and become a part of the contract made, as if they were expressly referred to and incorporated in its terms, including alike those laws which affect its construction, validity, enforcement or discharge. Com'rs. of Columbia County v. King, 13 Fla. 451, 474; State *ex rel.* Dos Anigos v. Lehman, 100 Fla. 1313, 131 So. 533. Indeed, such is the holding of the unbroken current of decisions of the Supreme Court of the United States and of other Federal Courts, by which decisions we are bound, when called upon to adjudicate questions of constitutional law arising under Section 10 of Article 1 of the Constitution of the United States. Von Hoffman v. Quincy, 4 Wall. 535, 18 L. Ed. 403."

In that case it was also said:

"All that relator prayed was, reduced to its last analysis, that the provisions of law which were applicable to being invoked for the collection of the bonds at the time they were originally issued are still regarded as an available

remedy, notwithstanding the change in the charter Act of Boynton brought about by the 1931 amendatory Act which created the new Town of Boynton Beach out of part of the territory of the old Town of Boynton. The peremptory writ, in the form that it was awarded, does precisely this and nothing more. If, therefore, the award of that writ was erroneous, it must be on the ground that the Legislature by the enactment of the 1931 statute creating the new Town of Boynton Beach had the constitutional right to alter, to the prejudice of creditors, the remedies and resources to which the relator was entitled by law to look had the amendment not been enacted.

But the Constitution of the United States is to the effect that all laws which may have been passed, since bonds were issued, purporting to take away taxes necessary to meet the payments pledged to be made therefrom when the bonds were sold are, as to affected security holders, invalid as impairing the obligation of contract. And the rule is further that, courts having authority by mandamus to require the public authorities to do what the law required to be done to provide for payment when the bonds were issued continue to have such authority to coerce by mandamus the public authorities to raise the means to pay their obligations in accordance with the laws under which they were incurred, or something substantially equivalent. County Court v. United States, 105 U. S. 733, 26 L. Ed. 1220, 1222."

And further, in the same case, it is said:

"On the other hand, the writ of mandamus may be similarly employed as a form of execution to enforce the collection of matured interest or principal, either by requiring the levy of taxes to meet the requirements for making payment or by sequestering funds already on hand, that may be

applicable for payment.   State *ex rel*. DuPont Ball, Inc., v. Livingston (Fla.) 139 So. 360.

"Both remedies are available in appropriate cases justifying them.   The fact that one remedy may exist to be applied to prevent an anticipated default does not preclude the use of the other remedy which is also available as a means of enforcing collection at maturity or after default."

Now, this Act of the Legislature purports to and attempts to deprive the holder of the past-due interest coupons of the remedy to enforce the full payment of his coupons from the funds on hand available for that purpose.   Therefore, it appears clear to us that the Act contravenes both the State and Federal Constitution prohibiting the impairing of contracts.

Section 10 of Article I of the Constitution of the United States provides in part as follows:

"No State shall enter into any Treaty, Alliance or Confederation; grant Letters of Marque and Reprisal; coin Money, emit Bills of Credit; make anything but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, *ex post facto* Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."

In McCracken v. Hayward, 2 Howard 608, 11 Law Ed. 397, the Supreme Court of the United States says:

"An obligation of a contract consists in its pending force on the party who makes it.   This depends on the laws in existence when it is made.   These are necessarily referred to in all contracts and form a part of them as a measure of the obligation to perform them by one party, and the right acquired by the other."

In Selovar v. Walsh, 126 U. S. 112, 57 Law Ed. 146, the Supreme Court of the United States said:

"It is elementary that the obligation of a contract is the law under which it is made."

Now, this being true, the contract in this case would be impaired by the enforcement of the Act here under consideration because that Act would take from one of the contracting parties, the holder of the interest coupon, a valuable right which accrued to him under the law as a part of the contract in depriving him of the right to enforce the full payment of his liquidated claim when there are sufficient funds on hand accruing for that purpose to pay the same.

In United States *ex rel.* Von Hoffman v. City of Quincy, 4 Wall. 535, 18 Law Ed. 403, the Supreme Court of the United States said:

"It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it as if they were expressly referred to or incorporated in its terms. This principal embraces alike those which affect its validity, construction, discharge and enforcement." This statute attempts to affect its enforcement."

Again, in the case last cited, it is said:

"Nothing can be more material to the obligation than the means of enforcement. Without the remedy, the contract may, indeed, in the same sense of the law, be said not to exist and its obligation to fall within the class of those moral and social duties which depend for their fulfillment wholly upon the will of the individual. The ideas of the validity and remedy are inseparable and both are parties of the obligation, which is guaranteed by the Constitution against invasion. The obligation of the contract is the law which binds the parties to perform their agreements."

Further, in that opinion, the Court quotes with approval from the opinion in Green v. Biddle, 8 Wheat 84, saying:

"The objection to a law on the ground of its impairing the obligation of a contract can never depend upon the extent of the change which the law affects in it. Any deviation from its terms by postponing or accelerating the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with those which are, however minute or apparently immaterial in their effect upon the contract of the parties impairs its obligation."

In the State of La. *ex rel.* Ranger v. City of New Orleans, 102 U. S. 203, 26 Law Ed. 132, it is said:

"The obligation of a contract in the constitutional sense is the means provided by which it can be enforced; by which the parties can be obliged to perform it. Whatever legislation lessens the efficiency of those means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is, to that extent, weakened."

To the same tenor and effect is Edwards v. Keazy, 96 U. S. 595, 24 Law Ed. 793. In the latter case it was said:

"The remedy subsisting in a State when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the State which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution, and is, therefore, void."

Now when the interest coupons here under consideration were issued the contract contemplated (because the law so provided) that if at any time one of those coupons became past due and unpaid and if at that time there was sufficient money in the fund provided for the purpose of paying the coupons in the hands of the municipal officials charged with

the duty of paying the coupons, the coupon holder could have his peremptory writ of mandamus to coerce and compel the officials to pay the full amount of his claim from such funds then on hand. Senate Bill No. 63 attempts to impair that obligation and to so change it that the coupon holder may only have coerced by writ of mandamus the payment of a part of his claim and may be relegated to future and different remedy to procure the balance.

In the light of the United States Supreme Court decision above referred to, there appears to us no doubt that this legislative Act contravenes Sec. 10 of Article I of the Constitution of the United Sttaes.

Having reached the conclusions which we have in regard to the legislative Act being in contravention of the Federal Constitution and that it attempts to encroach upon the constitutional jurisdiction of the circuit courts and the Supreme Court, we deem it unnecessary to discuss other objections to it.

For the reasons stated, the demurrer to the alternative writ and the motion to strike the alternative writ will be denied and the respondents will be allowed ten days from entry of this order in which to file such further pleadings as they may deem advisable.

It is so ordered.

WHITFIELD and TERRELL, J. J., concur.

ELLIS and BROWN, J. J., dissent.

DAVIS, C. J., absent from oral argument, not participating.

BROWN, J. (dissenting in part).—I concur fully in the major premises of the reasoning employed in the able opinion of Mr. Justice BUFORD, to the effect (1) that the Legislature cannot constitutionally pass any statute which impairs the obligation of an existing contract, or (2) which takes away or substantially impairs the only effective

remedy for its enforcement; or (3) which denies to any person the equal protection of the laws; or (4) which divests, in whole or in part, the constitutional jurisdiction of this Court and the circuit courts to grant the full scope of that relief which was recognized as inherent in the common law writ of mandamus at the time our constitution was adopted. 12 C. J. 825-6. To my mind, the judiciary of this State would be recreant to its high trust if it departed from these principles; at least so long as they remain as they are today, expressly or impliedly an integral part of our Constitution. But I cannot concur fully in all that is said in some portions of the opinion, by way of deduction from such premises.

The Act here under attack is unique in that it is attempted to make it purely retroactive in its effect on contracts, expressly providing that it shall not apply to obligations of governmental units issued subsequent to the passage of the Act. It seeks to compel the courts to issue only a certain kind of peremptory writ of mandamus, in any case where the holder of past due bonds or interest coupons is seeking to compel payment thereof from money actually on hand in the interest and sinking fund, and then proceeds to impliedly command the courts not to issue that kind of a writ if the bonds involved are issued after the passage of the Act. Not only is this such an arbitrary classification as probably amounts to a denial of the equal protection of the laws, but it arbitrarily invades that broad discretion with which the courts are constitutionally vested in exercising the judicial power in withholding or granting and administering relief under the common law writ of mandamus; and that, too, without making any express change in the substantive law as to the rights or duties of the governmental units or their officers. Under the common law writ

of mandamus, the courts can compel a public officer or members of a governmental board to perform their lawful ministerial duties when the relator shows a clear legal right to such performance. If the lawful duty of the officer is left unchanged, the Legislature cannot divest the courts of their jurisdiction to compel the performance of such duty at the suit of one who shows a clear legal right to such performance, for that jurisdiction is vested in the courts by the Constitution. This Act does not *expressly* attempt to change the substantive law as to the duties of governmental units or their officers, or the character or status of the funds in the hands of such governmental units; it is levelled solely at the only remedy by which performance can be secured, mandamus, the full common law scope and character of which is vested in the Supreme and Circuit Courts by the Constitution, and is therefore not subject to impairment by legislative action.

It has been suggested by counsel that, taking the Act as a whole, the court might *imply* therefrom an *intent* to change the substantive law. Let us examine the Act with this suggestion in mind. The body of the Act, Section 1, is quoted in the majority opinion. The title of the Act sets out the substance of that section. What might be called the preamble of the Act, preceding Section 1, reads as follows:

"Whereas in many taxing districts of this State, a large percentage of past due bonds and other obligations are in default because of large amount of delinquent taxes, yet such taxing districts are forced by mandamus suits to pay some of such past due obligations in full, to the extent of moneys on hand in the interest and sinking fund, thus exhausting the fund and leaving nothing for other creditors having obligations of equal dignity and lien:

"And whereas, such procedure constitutes an unfair pref-

erence of one creditor over another, and no creditor should be entitled to enforce payment of more than a pro rata share of moneys on hand in the interest and sinking fund, Therefore:

. "Be it enacted by the Legislature of the State of Florida:"

. Then follows the body of the Act, the substance of which is contained in Section 1.

. If this preamble could be construed to make the Act impliedly state a rule of substantive law, while such rule might be invalid if applied to most cases, it might possibly be constitutionally applied (as a mere statutory reiteration of already existing law) to a limited field,—a certain class of cases,—involving taxing districts and governmental units, which are, to all practical intents and purposes, insolvent, and the funds on hand are in the nature of a closed fund, or a fund which the facts of the case show is not in fact replenishable by the exercise of the taxing power to such an extent as to enable the taxing unit to meet its obligations as they mature, or within a reasonable time thereafter. Our cases, in which the rule of "first come, first served," has been applied, have been based upon the principle that even though the fund on hand was not sufficient to pay all matured bonds or interest coupons, it appeared that such fund was an accrual from, and replenishable by, the exercise of "an inexhaustible taxing power" which would enable the debtor to ultimately pay in full all who may have claims against the fund as a whole. But in cases where the facts show that, in so far as the possibility of the exercise of the taxing power not only to *levy*, but to actually *collect and produce,* the requisite funds is concerned, the theory of an "inexhaustible taxing power" is a fiction and not a fact, and that to grant the writ would result in paying the suing bondholder in full, leaving the other bondholders where they

would in all probability be paid either nothing at all, or a very small proportion of their bonds or interest coupons, at some unknown or remote future period, the theory or principle of "first come, first served," above alluded to, would not be applicable. This is what I understand the law to have been when the bonds were issued, and what I understand it to be today, entirely independent of this statute, even if it could be construed as respondents contend. If the statute should be construed as taking away or impairing a right, or an essential remedy of enforcement, which existed when the bonds were issued, it would be unconstitutional. If it be construed as being capable of being given a limited application in such cases as are above alluded to, it would as thus construed and applied be merely declaratory of existing law, as I understand it, and its enactment was unnecessary.

This Court has, in the recent and yet unpublished case of Moran, *et al.*, v. State, handed down July 11, 1933, recognized an exception to the "first come, first served" rule. In the opinion written by Mr. Justice TERRELL in that case, referring to the cases cited in State *ex rel*. Gillespie v. Carlton, 103 Fla. 810, 138 So. 612, it was said:

"In some of these cases the rule was recognized that when a fund was such that various and sundry creditors were compelled to rely on it as the only source from which their claims could be paid and that such fund was insufficient to pay all in full, and none being preferred, then equity would require that the fund be distributed *pro rata*." Citing Voorhies v. Mayor of Houston, 70 Tex. 331, 7 S. W. 679. The opinion also says that: "Drainage Districts organized under the general drainage law are not clothed with power to levy and collect taxes without limit to meet debts and other obligations incurred by them. Such tax levies are

restricted to the amount of benefits shown by the plan of reclamation and when this amount is reached the power to tax is cut off. (Sec. 1114 Rev. Gen. Stats., 1467 Com. Gen. Laws.). They therefore cannot be classified with municipalities and other taxing units having an inexhaustible taxing power, on which the rule above announced was predicated."

The equity doctrine referred to in this case just quoted from is set forth and discussed in Sections 405-407 of Pomeroy's Equity Juris. (4th ed.). In this discussion Pomeroy says: "In other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon an equal footing, and will decree a *pro rata* distribution of payment."

In the opinion of Mr. Justice TERRELL in the case above referred to, he observes that drainage districts organized under the general law are not clothed with the power "to levy and collect taxes without limit." Neither are municipalities, or other taxing units, clothed with the power to "collect" taxes without limit, although they may *levy* ever so high, or without limit. We might take judicial notice of the fact that many municipalities have found that there is a limit to the tax-paying power of their people, and that when assessments and levies are made so heavy as to be insupportable, the total amount collected is much less than when the assessments and levies were lower and more reasonable. Thus, there is a limit to the tax-collecting power of municipalities. The economic law of diminishing returns works out its inexorable results. And this law of economics cannot be repealed by the Legislature or the courts. So the term "inexhaustible taxing power" is not synonymous with "inexhaustible tax-collecting power." And

the power to levy taxes is of little avail when it is so vigorously used as to exceed and impair the power to collect. All that the bondholder has the real right to demand is that, if necessary to pay his bonds, the debtor taxing unit shall be compelled to so exercise the taxing power as to produce the maximum of cash returns. If, when this is done, the fund on hand and the funds which may reasonably be expected to be raised by taxation within a reasonable time in the future, are and will be insufficient to pay within any reasonable time all having a claim against such funds in full, and the taxing unit is, in effect, insolvent, not being able to meet its current obligations as they fall due, then the equitable principle above discussed would become applicable, and hence a *pro rata* distribution of the fund on hand should in such cases be made, thus equally protecting all those who have claims against the fund. This would not, under such circumstances, impair the contract obligations of the bondholders, but would prevent their impairment by preventing full payment to some at the expense of others. The cases of Keefe v. Adams, 106 Fla. 733, 143 So. 644, and State *ex rel*. Montgomery v. City of Ft. Pierce, 106 Fla. 845, 143 So. 733, come very near to being predicated upon the principle that the fund derived from taxes levied and collected for a particular purpose are imposed with a trust, and the taxing unit holding the fund thus created holds it as a trustee for that particular purpose, and cannot divert it to other purposes. We have also cited in several of our decisions the case of City of Austin v. Cahill, 99 Texas 172, 88 S. W. Rep. 542. In that case it was held that it was not necessary for all the city's bond holders to be before the court, because the city stood in the position of trustee for all its bondholders, and that they were constructively present through their trustee, the city.

In Duncan Townsite Co. v. Lane, 245 U. S. 308, 62 Law
Ed. 309, 38 Sup. Ct. Rep. 99, the Federal Supreme Court
said: "Mandamus is an extraordinary remedial process,
which is awarded, not as a matter of right, but in the exer-
cise of a sound judicial discretion. It issues to remedy a
wrong, not to promote one; to compel the performance of a
duty which ought to be performed, not to direct an act
which will work a public or private mischief, or will be
within the strict letter of the law, but in disregard of its
spirit. Although classed as a legal remedy, its issuance is
largely controlled by equitable principles." This case was
cited with approval in the recent case of United States v.
Dern, advanced sheets of 77 Law Ed. 790.

If the allowance of the writ of mandamus is controlled
by equitable principles, the writ should not be allowed when
to grant it would be to give a preference under such cir-
cumstances as under equitable principles would be denied.
See, in this general connection, Pittsburgh Steel Co. v. Bal-
timore Equitable Society, 226 U. S. 455, 57 L. Ed. 297, 33
Sup. Ct. Rep. 167; Note to case of Douglas v. Loftus,
(Kan.) L. R. A. 1915-B, 797, 806, *et seq.;* State *ex rel.*
Gillespie v. Thursby, 104 Fla. 103, 139 So. 372; State *ex rel.*
East Side Bank v. Holloway, 105 Fla. 616, 142 So. 221;
Morris, Mather & Co. v. Port of Astoria, 141 Ore. 215, 15
Pac. Rep. (2d) 385; Dillon on Munic. Corp. (5th ed.) Sec.
893; 10 R. C. L. 381; 38 C. J. 546-550; 21 C. J., subject,
"Equity," Sec. 207; Anniston Loan & Trust Co. v. Ward,
108 Ala. 85, 18 So. 937; Portland Sav. Bank v. City of
Montesano, 14 Wash. 570, 45 Pac. Rep. 158; City of Cleve-
land, Tenn. v. United States, 111 Fed. Rep. 341; State *ex
rel.* Burr v. Tavares & G. R. Co., 78 Fla. 329, 82 South.
Rep. 833; Board of Liquidation of New Orleans v. U. S.,

118 U. S. 136, 30 Law Ed. 65; Henley v. Myers, 215 U. S. 373, 54 L. Ed. 240.

I concur in the order made in the majority opinion, that the motion to strike the alternative writ be denied. This leaves the matter open for the respondents to show by their answer, if they can, such a state of facts as would bring into play the equitable principle hereinabove alluded to.

I think it makes very little difference in this case whether Senate Bill No. 63 is unconstitutional or not, or whether or not it could be constitutionally applied to the limited class of cases to which I have referred, because, as I see it, if this limited application of the statute could be made, it would to that extent be merely declaratory of already existing law, as I understand it. Mere fictions or theories of "inexhaustible taxing power" should not deter the court from applying well settled principles of law to the actual facts—the realities—of the particular case. It is merely a case of new applications of old principles, in the light of the real facts, without compromising or departing in the slightest degree from the constitution, or sound, well settled principles of law.