EVERGLADES DRAINAGE DIST. et al. v.
FLORIDA RANCH & DAIRY
CORPORATION.

No. 7489.

Circuit Court of Appeals, Fifth Circuit.

Jan. 15, 1935.

Rehearing Denied Feb. 9, 1935.

Herbert S. Sawyer, of Miami, Fla., George C. Bedell, of Jacksonville, Fla., and Francis B. Carter, of Pensacola, Fla., for appellants.

Thomas J. Ellis, Scott M. Loftin, Jno. P. Stokes, and James E. Calkins, all of Miami, Fla., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

BRYAN, Circuit Judge.

This is a bill brought by the Florida Ranch & Dairy Corporation, a Delaware corporation, to enjoin the members of the board of commissioners of the Everglades Drainage District, a Florida public quasi corporation, from transmitting to the tax assessors of counties lying wholly or partly within that district lists of lands for assessment of drainage taxes for the years 1932, 1933, and 1934, according to zones and rates of taxation prescribed by chapter 10026, Acts of 1925, on the ground that that act violates article 1, § 10, of the Constitution of the United States; and further to enjoin the transmission for assessment of any lists of land except those showing the zones and rates of taxation prescribed by chapter 9119, Acts of 1923. Plaintiff alleged that it owned lands in the district subject to taxation for drainage purposes, and also owned three $1,000 bonds of the district; that according to the zones and rates prescribed by the 1925 act the annual taxes upon its lands would be $7,000 more than they would be under the 1923 act; that the bonds which it holds were issued under the 1923 act and are in default as to principal and interest; that the change of zones and of the rates of taxation provided for by the 1925 act impairs the obligation of its contract as a bondholder; that under the 1923 and previous acts of the Legislature bonds to the amount of $11,250,000 had been authorized, of which bonds aggregating $9,653,000 had been issued and sold; that the act of 1925 purports to change the zones and annual rates of taxation, principally by reducing the taxes on 2 of the 4,000,000 acres within the district from 10 cents to 6 cents per acre, and by increasing the taxes on the remaining 2,000,000 acres; and that, although the taxes on the entire area considered as a whole have been increased, yet less revenue will be raised under the 1925 than under the 1923 act, because "all of the lands in the district are of the market value of only approximately the total amount of the defendant district's bond indebtedness, * * * and interest to accrue thereon, plus the taxes levied and imposed by the State of Florida and the outstanding unpaid tax secured bonds and coupons of the various counties, municipalities, and special improvement districts, which habitually and assiduously tax said lands. The tax yielding abilities of said lands, in point of fact, has been reached." It appears from two maps attached to the bill and made a part thereof, showing the zones and rates of taxation under the acts of 1923 and 1925, respectively, that the 2,000,000 acres on which under the act of 1925 drainage taxes have been reduced from 10 cents to 6 cents per acre are lands bordering on the Everglades proper, and that the remaining 2,000,000 acres on which the drainage taxes have been increased lie close to Lake Okeechobee, or to canals leading into the lake or out of it through those lands to the Ocean. Defendants in their answer admit that they had prepared lists of lands showing the amounts levied by the 1925 act, and stated that they expected to certify those lists for assessment, "in accordance with the judgments and opinions of the Supreme Court of Florida, entered and rendered by that court in State ex rel. Sherrill et al. v. Milam et al.," reported in 113 Fla. 491, 558, 559, 587, 153 So. 100, 125, 136. That was a case in which the Supreme Court of Florida, shortly before this suit was brought, ordered the

issuance of a peremptory writ of mandamus to compel these same defendants to transmit lists of lands for assessment according to the zones and rates of taxation prescribed by the 1925 act. The bill prayed for an interlocutory as well as a permanent injunction, and the defendants filed a suggestion that it was the duty of the District Judge to assemble a three-judge court as provided by 28 USCA § 380; but the District Judge overruled the suggestion, and on the same day signed an interlocutory injunction, which on June 29, 1934, was followed by a final decree granting a permanent injunction as prayed by the bill. Defendants thereupon applied to the Supreme Court for a writ of mandamus to compel compliance with their suggestion, but the Supreme Court on October 8, 1934, denied their application. Ex parte Everglades Drainage District, 55 S. Ct. 68, 79 L. Ed. ——. The Supreme Court of Florida, on September 11, 1934, having before it several motions, including one for the issuance of a peremptory writ of mandamus in accordance with its opinions in the Sherrill-Milam Case, supra, and taking notice of the proceedings in this case in the District Court, entered an order, the concluding part of which is as follows: "That in keeping with the dignity of this court, as also of the federal court, in order to prevent unseemly conflict between the jurisdiction of the two courts, it is ordered that this court hold final action on the motions now under consideration in abeyance until the question of jurisdiction is determined in the proceeding now before the federal court, or until the further order of this court." State ex rel. Sherrill et al. v. Milam (Fla.) 156 So. 497.

The pertinent statutes relating to the Everglades Drainage District appear as sections 1530 to 1628, Compiled General Laws of Florida. The history of the district and of the laws affecting it is reviewed in comprehensive detail in the opinion by Mr. Justice Whitfield in Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449. It is only necessary to say here that the Legislature levies the drainage taxes; that a levy of taxes once made remains in force until it is changed by subsequent legislation; that no limit is placed by statute upon the amounts so levied, or to be levied, or upon the amount of bonds that may be issued and sold from time to time; that all outstanding bonds are of equal dignity; and that whenever additional bonds are issued additional taxes to take care of them are required to be levied. Chapter 10026 also authorized the issuance of $3,000,000 of additional bonds, but so far none of such bonds has been issued. Chapter 10027, Acts of 1925, authorized the issuance of refunding bonds; and, of these, bonds totaling $4,000,000 have been issued and accepted by bondholders in exchange for bonds of original issue.

The defendants appeal, and, aside from the merits, contend that the District Judge erred (1) in overruling their suggestion that a three-judge court be assembled on the ground that the defendants were state officers, and therefore the resident District Judge was without jurisdiction to proceed alone with the case; (2) in enjoining proceedings in a state court, contrary to section 265 of the Judicial Code, 28 USCA § 379; (3) in disregarding the decision and order of the Supreme Court of Florida and enjoining the defendants from doing the very acts which they were bound to do by order of that court, although its peremptory writ had not actually been issued; on the ground that the District Court failed to give effect to the rule of comity which should be adhered to by all courts, and particularly as between state and federal courts.

A three-judge court is not required by 28 USCA § 380, except when an interlocutory injunction is sought to restrain the action of officers of a state, although the execution of a state statute is sought to be enjoined. We take it that the decision of the Supreme Court denying the application of the defendants for a writ of mandamus against the District Judge is conclusive authority upon us that this case is one within the sole jurisdiction of the resident District Judge, and consequently that the statute invoked by the defendants does not apply. Ex parte Metropolitan Water Co., 220 U. S. 539, 31 S. Ct. 600, 55 L. Ed. 575; Ex parte Public National Bank of New York, 278 U. S. 101, 49 S. Ct. 43, 73 L. Ed. 202. The injunction issued by the District Court did not directly or in terms purport to stay the proceedings in the state court. The parties plaintiff were different in the two cases. Plaintiff here not being a party to the proceedings in the state court was not bound by what was there decided, but was free to pursue its own remedy. The rule of comity between state and federal courts does not go to the extent of relieving the latter from the duty of proceeding promptly to enforce rights asserted under the Federal Constitution. Coombes v. Getz, 285 U. S. 434, 52 S. Ct. 435, 76 L. Ed. 866. The Supreme Court of Florida in the considerate entry of its

order above quoted, holding further proceedings before it in abeyance for the purpose of allowing an opportunity for decision on this appeal, seems to have been guided by this principle.

On the merits we are confronted at the outset with the decision of the Supreme Court of Florida in the Sherrill-Milam Case. The relators in that case were refunding bondholders, but the decision would doubtless have been the same if they had been original bondholders, since only one levy is provided for and it applies to all bondholders alike. The court held that chapter 10026, Acts of 1925, and not chapter 9119, Acts of 1923, was controlling in the fixing of zones and rates of taxation. It therefore in effect rejected the construction placed on these two statutes by a three-judge court in the case of Rorick v. Board of Com'rs of Everglades Drainage District (D. C.) 57 F.(2d) 1048. Notwithstanding the decision in the Rorick Case, the federal District Court and this court are bound by the construction placed upon these statutes by the highest court of the state. Accepting the Supreme Court's construction of its meaning and effect upon earlier acts of the Legislature, it remains our duty to inquire whether chapter 10026, as so construed, impairs the obligation of plaintiff's contract. It is plain that plaintiff in its capacity of landowner and taxpayer is not entitled to complain; for in such capacity it had no contract obligation to be impaired. Nor in our opinion has plaintiff in its capacity of bondholder shown any violation of the contract clause of the Federal Constitution by reason of the fact that the 1925 act increased the taxes on the 2,000,000 acres of land in the Everglades proper, which it appears have and will receive the greatest benefit from the drainage operations. There is no limit placed by any act of the Legislature upon the amount required to drain and reclaim the lands; but the Legislature is left free, so far as bondholders are concerned, to increase the drainage taxes to any amount needed for that purpose. It was necessarily assumed by purchasers of bonds that the lands in the district were of sufficient value to be good security for the drainage taxes levied, and to be levied upon them from time to time; for the lands are the only security behind the bonds. If it be true, as alleged but not proven, that the market value of lands in the district does not exceed the drainage and all other taxes levied and to be levied, still it has not been shown that the act of 1925 impairs the obligation of any

bondholder's contract in violation of the Federal Constitution; for nothing more is being done in the way of levying taxes than was contemplated by the bond contracts. It is no fault of the law if perchance the purchase of bonds prove to be an unwise investment, or one made upon inadequate security. The decrease of the tax levy provided for by the act of 1925 in the zone containing 2,000,000 acres of lands bordering on the Everglades presents a different situation. Of course bondholders are primarily interested in the raising of enough taxes to pay interest and to provide a sinking fund to pay off the principal of the bonds; so long as this is done they are not concerned with the raising or lowering of taxes on particular lands. When, however, default occurs for lack of funds, the bondholders are entitled to insist upon their contracts being enforced without material change. The maps attached to the bill show that in all the inside zones comprising the Everglades proper taxes have been considerably increased, but the zones themselves as they existed under the 1923 act have not been much changed. Plaintiff alleges that because of the changes made in 1925 less revenue will be realized. Whether that prophecy be true or not necessarily rests on opinion evidence, which in the nature of things would be so insubstantial as to be of no probative value. But in our opinion plaintiff has the right to show if it can that the reduction of taxes in the largest zone containing 2,000,000 acres, upon which the taxes have been decreased some $85,000 per annum by the act of 1925, impairs the obligation of its contract as a bondholder. Mandatory injunction is not directly prayed for by the bill, but if it is inferentially, or if the bill could be cured in that respect by amendment, yet, as it appears to us, mandatory injunction to restore the higher taxes levied by the 1923 act should not, in the exercise of a sound discretion, be issued. Plaintiff has an adequate remedy at law by first reducing the amount due on its bonds to judgment, and then, if necessary in aid of such judgment, by proceeding by mandamus to seek the restoration of the levy authorized by the 1923 act on the lands in the largest zone containing 2,000,000 acres of border lands. This being so, plaintiff is not entitled to proceed in equity for relief by injunction. 14 R. C. L. 317, 341.

The decree is reversed, with directions to dismiss the bill of complaint without prejudice to the right of the plaintiff to proceed in an action at law and seek therein to com-

pel the restoration of taxes as levied by chapter 9119, Acts of 1923, wherever such taxes have been reduced under the provisions of chapter 10026, Acts of 1925.