## PAPE v. ST. LUCIE INLET DISTRICT AND PORT AUTHORITY, etc., et al.*
### No. 7334.

Circuit Court of Appeals, Fifth Circuit.

Feb. 22, 1935.

Giles J. Patterson, of Jacksonville, Fla., for appellant.

D. C. Hull and Francis P. Whitehair, both of De Land, Fla., and T. T. Oughterson and Evans Crary, both of Stuart, Fla., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, plaintiff below, a citizen of and resident in the state of Florida, is the holder of eighty-nine of the first issue bonds of the St. Lucie Inlet District, a Florida public corporation, created for the purpose of improving and maintaining the St. Lucie river as a waterway, by deepening it, and constructing and maintaining an inlet connecting its mouth with the Atlantic Ocean. Appellees are the Board of Commissioners of and the St. Lucie Inlet District and Port Authority, a public corporation created to take over, assume responsibility for, and levy, assess, and collect taxes to pay the first and second issue bonds, and the other indebtedness of the St. Lucie Inlet District. The suit, brought on the assumption that first in issue was first in right, sought a decree awarding the first issue bonds priority of lien and payment out of tax and other moneys in and coming into the hands of the board, and a mandatory injunction enforcing this award. It was brought in the federal court on the ground that obligations of plaintiff's contract were impaired by the action of the Port Authority and its board, in failing to provide sufficient moneys to fully service the bond maturities, and in apportioning the insufficient moneys on hand in partial pro rata payment of all maturities, instead of in full payment of those of the first series. As a basis for the claim made and the relief asked, the bill alleged the creation in 1923 of the St. Lucie Inlet District (Special Acts Fla. 1923, c. 9631), with defined boundaries, and authority to issue bonds if approved by vote of the taxpayers; the aggregate amount of such bonds to at no time exceed $250,000. That the board was required, in connection with and as a part of the issue of bonds, to determine by resolution the amounts necessary to be raised annually by taxation, to pay interest and establish a sinking fund, to provide for their annual levy and collection, and for their pledging and devotion to the purpose for which they were collected. It alleged the issuance and sale of 250,000 6 per cent. bonds, maturing serially in equal amounts over 35 years, beginning January 1, 1930; the making of due provision for their servicing and payment; and the setting aside as

*Rehearing denied March 25, 1935.

a special fund, and as pledged to the bonds, the sums to be so provided.

It was further alleged that the provisions of the act creating the district[1] and the proceedings taken under it, including the resolution of the board, and the bonds themselves, constituted an unimpairable contract between the district and the holder of the bonds, that these bonds had, and would continue to have, a first lien and claim upon the revenues of the district. The bill then sets out the amendment in 1925 of the act creating the district, changing and greatly enlarging its boundaries, and increasing the bond limit from $250,000 to $1,250,000 (Acts Fla. 1925, Ex. Sess., c. 11693); the due issuance under this authority of $1,000,-000 of 5½ per cent. serial bonds,[2] the due provision for interest and sinking funds to service them, and that ever since, the Board of Commissioners of the District as amended, at first under that name, and after 1927 (Acts Fla. 1927, c. 12254) under the name of Martin St. Lucie Counties Improvement District, to which the Legislature in that year changed it, had levied and collected taxes on all the lands embraced in the new district, for the interest and sinking fund on both issues.

In 1929 the Legislature abolished the Martin-St. Lucie Counties Improvement District, creating a successor to it known as the St. Lucie Inlet District and Port Authority, to take its titles, rights, and ownership, and to assume and discharge its debts, contracts, bonds, and other obligations, with authority to levy upon the taxable property in the district a special tax sufficient to pay and retire, as they matured, all of its bonds and other obligations.[3] From the taxes late-

---

[1] Section 21, c. 9631, Special Acts of Florida 1923, provides: "The provisions of this Act shall constitute an irrepealable contract between said Board and the holders of any bonds and coupons issued pursuant to the provisions hereof. Any holder of any such bond or bonds, coupon or coupons may, either at law or in equity, by mandamus or other appropriate suit or action, enforce and compel the performance of any duty required by this Act of any officer or person mentioned herein relating to said bonds or the collection, enforcement or application of the taxes for the payment thereof."

Section 22. "It shall be the duty of the Board out of the proceeds of the taxes levied and imposed by this Act and out of any other moneys in the possession of said Board, to apply said moneys so far as may be necessary to pay the interest upon said bonds as the same becomes due and to provide and set aside a sinking fund for the payment of the interest of said bonds, and at the maturity of said bonds out of said moneys to pay the principal thereof. Said Board shall set apart and pay into such sinking fund annually the amount required by the resolution to be paid into said sinking fund during said year; and the sinking fund for the payment of the principal of said bonds shall not be appropriated or used for any other purpose than the payment of the principal of said bonds."

Section 27. "The Board of Commissioners of St. Lucie Inlet District is hereby authorized, empowered and directed annually to levy upon all of the real and personal taxable property in said District a sufficient tax to pay the interest and to provide and maintain a sinking fund for the payment of the interest and principal of the bonds provided for and authorized by this Act."

[2] "The maturities of said bonds being as follows:

"$5,000 on July 1, each year, 1931 to 1933 inclusive.

"6,000 per year from 1934 to 1936 inclusive.

"10,000 per year from 1937 to 1939 inclusive.

"15,000 per year from 1940 to 1942 inclusive.

"18,000 per year from 1943 to 1946 inclusive.

"23,000 per year from 1946 to 1948 inclusive.

"28,000 per year from 1949 to 1951 inclusive.

"35,000 per year from 1952 to 1954 inclusive.

"40,000 per year from 1955 to 1957 inclusive.

"50,000 per year from 1958 to 1960 inclusive.

"59,000 per year from 1961 to 1965 inclusive.

"Said bonds bear interest at 5½ per cent. per annum, payable semiannually according to coupons attached thereto."

[3] Acts Florida 1929, c. 13808 (No. 244).

Section 3. "That the title, rights and ownership of all real and personal property, uncollected taxes, claims and choses in action held or owned by the said Martin-St. Lucie Counties Improvement District in Martin and St. Lucie Counties, Florida, shall pass to and be vested in the St. Lucie Inlet District and Port Authority hereby created under this Act. All lawful debts, contracts, bonds and other obligations of the Martin-St. Lucie Counties Improvement District in Martin and

ly levied the district has received sums which, though sufficient to pay in full the maturing bonds of the first series, if solely applied to them, are wholly insufficient to pay all, and it has passed a resolution attempting to divide the proceeds of the levies between the issues, 4 mills to the first series, the balance to the second.

Plaintiff alleges that this act of the commissioners was unwarranted, both because chapter 13808, Laws 1929, creating the defendant district, does not permit the board to make such division, but requires the levy of sufficient taxes to pay all maturities, and because to do so is to impair the obligation of the first issue of bonds as that was fixed by sections 21, 22, and 27 of chapter 9631, note 1, supra.

Plaintiff alleges that this division was made for the benefit of the second bond issue, and because the board was unwilling to levy a sufficient tax, as they were required by law to do, to pay all maturities of both issues. Defendants filed an answer, setting up these "defenses in point of law" that the court, as a federal court, was without jurisdiction of the suit for want of a substantial federal question; that as a court of equity it was without jurisdiction, because the bill shows on its face that plaintiff has an adequate remedy at law; that on its face the bill is without equity, in that it fails to show any right of priority of the one issue over the other, since it shows that no priority was expressly granted, and that the taxes it is claiming were derived generally from the whole district as enlarged, and in that it shows that the question of priority is wholly immaterial, since the district has ample power, and is under the duty, to levy sufficient taxes to pay all the bonds, and it may be compelled by mandamus to do so.

As defenses "in point of fact," the answer admitting the original creation of the district and the issue of its bonds, the amendment changing the boundaries of and enlarging the district and authorizing additional bonds, the levy of taxes upon the new district, and the payment of some of plaintiff's bonds out of it, indeed, substantially all of the well-pleaded facts, denies the conclusions of the bill that the first issue was entitled to priority and that plaintiff's contract has been impaired. By way of affirmative defense the answer alleged that plaintiff is estopped to complain of the issuance of the second series of bonds, because he did not protest the extension of the boundaries of the district, or the issuance of the new bonds, and because he has taken and is claiming the right to take the taxes received from the district at large as it exists since its enlargement, and because, in a mandamus suit to compel payment of some of the coupons and interest on his bonds, he obtained and acquiesced in a mandamus decree

---

St. Lucie Counties, Florida, now existing or outstanding are hereby declared to be valid, binding and unimpaired as the debts, contracts, bonds and obligations of the St. Lucie Inlet District and Port Authority under this Act."

Section 4. "The Special Taxing District, created by this Act, is hereby authorized and empowered to levy such taxes upon the taxable property within the said District as may be necessary to pay and retire all bonds and other obligations of said Martin-St. Lucie Counties Improvement District in Martin and St. Lucie Counties, Florida, which are hereby assumed by said new Special Taxing District created under the provisions of this Act."

Section 26. "That said Board is hereby authorized and empowered to levy annually on all real and personal taxable property in said District, a special tax sufficient in amount to pay the interest becoming due and payable annually, upon any bonds issued or assumed or hereafter issued by said District, and also to create a sinking fund for the payment of the principal thereof at maturity. * * *

Said levy shall be made each year not later than the twenty-eighth (28th) day of June by a resolution of said Board or a majority thereof, duly entered at large upon its minutes. * * * It shall be the duty of the Board of County Commissioners of Martin and St. Lucie Counties, Florida, to order the assessors of said counties to assess and the collectors of said counties to collect the amount of taxes so levied by said Board of Commissioners of St. Lucie Inlet District and Port Authority upon all of the taxable real and personal property in said District in the respective counties at the rate of taxation adopted by said Board for the year, and included in said resolution, and said levy shall be included in the warrant of the tax assessor and attached to the assessment roll of taxes for each of said Counties each year. The tax collectors of said Counties shall collect such taxes as levied by said Board in the same manner as other taxes are collected and shall pay the same within the time and in the manner prescribed by law to the Treasurer of said Board."

that the bonds and interest he obtained payment of were entitled to be paid ratably with and not prior to, the others.

Plaintiff replied to the contention of estoppel by the acceptance of the benefits of the enlarged district, that he was not attacking the creation of the new district, but was merely insisting 'that the new district first, and the defendant district afterwards, expressly took his preferential contract over as it was, and bound itself to perform it. He replied to the contention of estoppel by the mandamus suit that this suit had been disposed of by adjustment and agreement, and, besides, that it related, and could have effect only as to the particular coupons and bonds then in judgment.

The only testimony taken was on the issue of the mandamus suit. No attempt was made to show the taxable values of the district, or that they were not ample to support levies sufficient to produce the full amount of taxes necessary to service complainant's bonds. No evidence was offered explaining why the commissioners levied less than the full amount necessary to pay all bonds. The District Judge, thinking that the mandamus proceedings estopped plaintiff from taking a position for priority of payment now, when he had taken a position for pro rata payment then, ordered the cause dismissed for want of equity. This appeal is from that order. Here appellant insists that his bill definitely asserts a federal right, and brings him well within the rule that where a federal question is not colorably, but substantially raised, not merely laid claim to, the bill will be entertained and disposed of on its merits, though on an examination no equity is found. Iowa-Des Moines Bank v. Bennett, 284 U. S. 239, 52 S. Ct. 133, 76 L. Ed. 265; Mosher v. Phoenix, 287 U. S. 29, 30, 53 S. Ct. 67, 77 L. Ed. 148. He insists, too, that there was equity in his bill. He claims, on the authority of St. Louis Union Trust Co. v. Franklin American Trust Co. (C. C. A.) 52 F.(2d) 431, 87 A. L. R. 386, that when the Legislature created the St. Lucie Inlet District with the provision that its bonds should not exceed $250,000, and the commissioners, acting under that authority, issued bonds and made provision for levying and collecting interest and sinking fund, a contract arose which was impaired by any increase of the bonded indebtedness of the district, except in subordination to the first issue.

We gravely doubt that appellant's bill presents a substantial federal question. It is true enough that it does lay claim to the right to invoke federal jurisdiction, and does claim that the facts alleged show that plaintiff's contract has, in violation of the Federal Constitution, been impaired. But the most casual inspection of the bill shows the facts relied on to be so unrelated to the claim as to make it seem unsubstantial and unreal. "Jurisdiction, as distinguished from merits, is wanting where the claim set forth in the pleading is plainly unsubstantial. * * * And the federal question averred may be plainly unsubstantial * * * because obviously without merit." Levering & Garrigues v. Morrin, 289 U. S. 103, 53 S. Ct. 549, 550, 77 L. Ed. 1062; Ex parte Poresky, 290 U. S. 30, 54 S. Ct. 3, 78 L. Ed. 152. That is, where it plainly appears from the bill that there is really no substantial federal controversy to be examined and adjudicated. Under the application of this rule plaintiff's bill barely, if at all, confers jurisdiction, for the question it seeks to make a controversy of, whether a bond issue of a district, all of whose bonds are payable out of funds replenishable by the exercise of an inexhaustible taxing power, has priority over later issues, has already been definitely settled against his contention. Rowekamp v. Mercantile-Commerce Bank & Trust Co. (C. C. A.) 72 F.(2d) 852; Krietmeyer v. Hemphill (C. C. A.) 19 F.(2d) 513; Howe v. Long Prairie, 187 Ark. 725, 62 S.W.(2d) 10; State ex rel. Gillespie v. Carlton, 103 Fla. 810, 138 So. 612; Highway Dist. No. 1 of Fremont County v. Fremont County, 32 Idaho, 473, 185 P. 66; Feemster v. City of Tupelo, 121 Miss. 733, 83 So. 804; Rorick v. Dalles City, 140 Or. 342, 12 P.(2d) 762; Harsha v. City of Detroit, 261 Mich. 586, 246 N. W. 849, 90 A. L. R. 853. It is perfectly plain, however, that plaintiff's bill does not state a case for the exercise of the equity jurisdiction, because plaintiff has an adequate remedy at law by mandamus, Walkley v. City of Muscatine, 6 Wall. 481, 18 L. Ed. 930; Fineran v. Bailey (C. C. A.) 2 F.(2d) 363; Everglades Drainage District v. Florida Ranch & Dairy Corp., 74 F.(2d) 914; Safe Deposit & Trust Co. v. City of Anniston (C. C.) 96 F. 661; Coquard v. Indian Grave Drainage District (C. C. A.) 69 F. 867; Virginia v. West Virginia, 246 U. S. 565, 38 S. Ct. 400, 62 L. Ed. 883; State of Oregon v. Slusher, 114 Or. 498, 244 P. 540, 58 A. L. R. 114, and Note p. 117; State ex rel. Havana State Bank v. Rodes (Fla.) 157 So. 33; Humphreys v. State, 108 Fla. 92, 145 So. 858, and because, considered on its merits, the bill is without

equity. Federal equity jurisdiction will not be exerted to interfere in matters involving the fiscal or public affairs of a state or its subdivisions, without a substantial showing of the existence of a right, and a really threatened and irreparable injury to it demanding the protection of a federal equity court. Commonwealth of Pa. v. Williams, Feb. 4, 1935 (U. S.) 55 S. Ct. 380, 79 L. Ed. ——; Harrisonville v. W. S. Dickey Clay Mfg. Co., 289 U. S. 334, 53 S. Ct. 602, 77 L. Ed. 1208; Fenner v. Boykin, 271 U. S. 240, 46 S. Ct. 492, 70 L. Ed. 927; Central Ky. Natural Gas Co. v. R. R. Comm., 290 U. S. 264, 54 S. Ct. 154, 78 L. Ed. 307; Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447; Stratton v. St. L. S. W. R. Co., 284 U. S. 530, 531, 52 S. Ct. 222, 76 L. Ed. 465; Yarnell v. Hillsborough Pkg. Co. (C. C. A.) 70 F.(2d) 435; Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U. S. 276, 29 S. Ct. 426, 53 L. Ed. 796; Northport Co. v. Hartley, 283 U. S. 568, 51 S. Ct. 581, 75 L. Ed. 1275; c/f Amazon Petroleum Corp. v. R. R. Comm. (D. C.) 5 F. Supp. 639.

The slightest reflection on what the bill claims convinces that there is no equity in it. Without any allegation as to what part of the taxes had been realized from the district as it was constituted when the first bond issue was authorized, and without complaining of the creation of the new district as impairing the conditions of the bond contract, plaintiff accepts the new territory and the new levy. He complains, as impairing the obligations of his contract, only of the act of the board in attempting to appropriate funds in hand ratably among the issues, funds not derived from a particular levy on particular property to pay the first issue, but from levies made on all the property to service all the bonds. The bill makes no showing that the values of the district are not adequate to pay all the bonds in full. In such circumstances, as to a district like defendant, empowered to levy taxes on all the property in it to service all the bonds against it, a mere allegation that sufficient taxes have not been levied and collected, and that some of those collected are about to be applied to other bonds than plaintiff's, does not make out a case of contract impairment. Bonds of the kind sued on here are general obligations of the district. Cf. Duval Cattle Co. v. Hemphill (C. C. A.) 41 F.(2d) 433. They are not charged on specific lands, nor, except when under the law authorizing their levy and collection they have been properly appropriated to the payment of specific issues, are taxes collected generally to pay bonds of such a district chargeable with a lien or priority in favor of any particular issue. First come, first served, is the general rule particularly in mandamus suits, to subject such funds to the payment of particular bonds. State v. City of Lakeland, 112 Fla. 200, 150 So. 508, 509, 90 A. L. R. 704; Voorhies v. City of Houston, 70 Tex. 331, 7 S. W. 679; City of Austin v. Cahill, 99 Tex. 172, 88 S. W. 542, 89 S. W. 552; City of Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560; Hidalgo County Road Dist. No. 1 v. Morey (C. C. A.) 74 F.(2d) 101. Funds realized from general levies made as in this case are general funds, available in the discretion of the board to pay any of the bonds, in whole or in part. It is for the board to say, in the absence of mandamus or other appropriate action constraining them, what bonds it will pay and how it will pay them. Of course this does not mean to say that a case for equitable intervention might not arise where bond funds were about to be totally diverted and misappropriated. Trustees v. Bailey, 10 Fla. 112, 81 Am. Dec. 194, relied on by appellant, was such a case. We dealt with such a case in Hidalgo County Road Dist. No. 1 v. Morey, supra, where the authorities are set out. No such case is made out here. All that appears here is that plaintiff has an absolute right to have the interest and bonds due him paid. The district, under a peremptory duty to levy and collect taxes to pay them, has failed in that duty. The wrong that has been done plaintiff lies, not in the division and apportionment of the taxes the board has made, but in its failure to make a sufficient levy and collection to pay his claim. For this wrong mandamus is the complete and efficient remedy. To that plaintiff must resort.

There was no error in dismissing the bill.
The decree is affirmed.