870

ECKER et al. v. SOUTHWEST TAMPA
STORM SEWER DRAINAGE DIST.
et al.

SUNSET PARK HOLDING CO. v. ECKER
et al.

No. 7381.

Circuit Court of Appeals, Fifth Circuit.

Feb. 28, 1935.

Giles J. Patterson, of Jacksonville, Fla., W. F. Himes and John R. Himes, both of Tampa, Fla., and R. E. Kurtz, of Fort Myers, Fla., for appellants and cross-appellees.

Henry H. Cole, of Tampa, Fla., for cross-appellant.

A. G. Turner, Herbert S. Phillips, and John B. Sutton, all of Tampa, Fla., David M. Wood, of New York City, and S. L. Holland, of Bartow, Fla., for appellees.

W. J. Altfilisch, of Chicago, Ill., amicus curiæ.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal is like Krietmeyer's [1] in two particulars. It is from a decree directing the application of tax funds in the hands of a Florida drainage district receiver. It involves a controversy between holders of bonds of different issues. Here the similarity ends. On that appeal, the decree was reversed because it did not treat the funds in the receiver's hands as common to all the bonds. This decree must be reversed because it did. In the Krietmeyer Case there was only one "Plan of Reclamation"; in this case there were two, the original plan adopted at the meeting of August 1, 1924, the revised plan adopted at the meeting of November 25, 1925. In that case there was only one assessment of benefits, and it was based upon the "Plan of Reclamation." In this case there were two, one upon "The Plan of Reclamation"; one upon "The Amended Plan of Reclamation." In that case the three bond issues involved were supported by tax levies upon portions of the benefits from "The Plan of Reclamation." In this case each of the two total tax levies supporting the two issues was upon a different estimate of benefits. The tax for the first issue was upon the benefits first found, for the second issue, upon those found in the second commissioners' report. In that case, the proceeds of all the issues were expended on "The Plan of Reclamation." The proceeds of the first issue began it; those of the second and third issues completed it. In this case the proceeds of the two issues were expended on different plans; the proceeds of the first issue entirely on "The Plan of Reclamation," those of the second issue on the "Amended" or "Revised Plan," additional work not contemplated on the original plan. In that case nothing appeared but that the taxes and assessments levied were intended to provide a common fund for the payment of the district's obligations, incurred in connection with "The Plan of Reclamation." In this case the first total tax levied by the district, and the installments thereof,

---

[1] Krietmeyer v. Hemphill (C. C. A.) 19 F.(2d) 513, 514.

were levied, apportioned, and pledged to the payment of the first issue, and the subsequent total levy and installments thereof were levied and pledged to the payment of the second issue. In that case neither in the petition of the receiver, nor in the proceedings had on it, was there any showing made that the moneys on hand had been collected other than by common levy for a common fund. In this case it affirmatively appears that the fund in the receiver's hands was not derived from a common levy for a common purpose, but from separate levies upon separate benefit assessments, and for application to separate bond issues, and that a considerable portion, plaintiffs claim two-thirds of the moneys, in the hands of the receiver, was the result of taxes levied, collected, apportioned, and pledged for the payment of the first issue. It definitely appears, too, that the pro rata distribution of the moneys in accordance with the decree would result in the allotment of three-fourths of the total fund to the second issue. The facts are undisputed. Those material may be briefly stated.

On June 22, 1923, the circuit court of Hillsborough county, Fla., pursuant to the Florida drainage district laws, created the Interbay Drainage District, and it remained Interbay until 1927, when its name was changed to Southwest Tampa Storm Sewer Drainage District. On September 3, 1924, its board of supervisors adopted a plan, which became "The Plan of Reclamation." On October 13, 1924, the report of commissioners, assessing benefits accruing to all lands in the district by reason of the execution of "The Plan of Reclamation" at $3,-412,222, was duly confirmed. On October 16, 1924, the board levied against the benefits assessed, a tax of $756,595.51, the amount found necessary to pay the cost of the completion of the works and improvements shown by "The Plan of Reclamation" plus 10 per cent. for emergencies. By further resolution it required that the tax should be apportioned and levied on each tract of land in the district in accordance with, and not in excess of, the benefits assessed. On February 6, 1925, the board, to make further and more definite provision as to the amount of taxes to be levied for and appropriated to the payment of the bonds and interest to accrue, resolved that "the taxes theretofore levied should be collected in annual instalments, the amounts to be certified for collection being set forth in a table, and that the amounts so certified each

year should, when collected, be used for the purpose of paying the principal and interest of said bonds and for no other purpose." The bonds were thereafter issued, the issue was validated, and plaintiffs and interveners now hold most of the issue. On October 19, 1925, the engineer of the district presented a revised plan of reclamation providing for "modification and changing of the plan of reclamation" by the addition of covered ditches and other improvements, "a regular city storm sewer project." The plan was adopted by the board, and the circuit court petitioned to change and modify "The Plan of Reclamation," in accordance with said "Revised Plan" did, on December 14, 1925, approve it. Thereafter, as had been done in connection with "The Plan of Reclamation," commissioners assessed the benefits and damages to each piece and parcel of land embraced in the district, flowing from the "Revised Plan." They found the aggregate amount of additional benefits, accruing to the property assessed in the report, from carrying out the "Revised Plan" to be $4,-186,181.40 and the estimated cost of carrying it out to be $2,361,830.40. This report having been confirmed by the circuit court, the board on June 1, 1926, levied a tax against these benefits of $2,361,830 plus 10 per cent., determined to issue bonds, estimated the interest which would accrue, increased the taxes to cover the interest, made provision for the levy each year of such taxes, and by resolution apportioned the levies for this issue so provided for, to the payment of that issue and to no other purpose. Interest coupons on both issues are in default, and some bonds are due though the district, through its board of supervisors, has heretofore annually determined, ordered and levied an installment of taxes sufficient to meet the maturing principal and interest of two issues, as called for by the two resolutions authorizing the two bond issues. For each of the years from 1924 to 1933 the defendant district has had prepared an annual Drainage Tax Book as required by law, in which there has been assessed against each parcel of land in the district affected a tax equivalent to the amount of the annual installment of taxes levied against it. There has been no segregation by the receiver to the issue for which it was levied and collected, of the taxes heretofore collected and in his hands for the payment of bonds, nor has he undertaken to determine what part of the taxes came from the levies on account of the first assessment, and what part from those on the second. The records,

however, are such that this can be easily ascertained. There was a great delinquency in taxes through 1924 to 1933, but only an insignificant part of the 1924 and 1925 tax so collected from the first assessment alone, is delinquent. The large delinquencies have occurred since the second issue of bonds, and particularly since 1928.

Appellants, on these facts, say that the case is a simple one, not ruled by Krietmeyer's appeal, or by those similar cases where more than one series of bonds has been issued by a district having full authority to issue bonds, and to collect taxes for all of the issues by one levy, applicable to all. Wesley Pape v. St. Lucie Inlet District (C. C. A.) 75 F.(2d) 865, and cases cited. Here, they say, unlike in those cases, there is no question of priority at all. Their only insistence here is that the taxes levied and collected upon the benefits assessed under "The Plan of Improvement" and by resolution appropriated to their payment, be applied to the bonds issued under it.

Appellees, still insisting that the Krietmeyer Case rules this one, say further that the Florida Drainage District Act, chapter 6458, Acts 1913, and amendments, especially section 41 (Rev. Gen. St. Fla. 1920, § 1138), as amended by Acts 1923, c. 9129, § 1 (now Comp. Gen. Laws Fla. 1927, § 1493),[2] under which the taxes in question were collected, compels the application ordered by the decree. Appellants say, not so. They insist that the statute requiring the receiver to apply funds in his hands in pro rata payment of maturities, must be construed as having relation to taxes collected as a common fund to pay bonds resting upon the same assessment. That its purpose no doubt, was to prevent, in such proceedings, the application of the "First come, first served" rule obtaining in mandamus suits. State ex rel. v. Livingston, 104 Fla. 33, 139 So. 360; State ex rel. v. Scholtz, 114 Fla. 135, 154 So. 871; State ex rel. v. City of Lakeland, 112 Fla. 200, 150 So. 508, 90 A. L. R. 704; Pape v. St. Lucie Inlet District, supra. It could not, they say, be construed as undertaking to apply to the payment of bonds, taxes which had not been levied for their payment, for such a construction would not only be unreasonable, but would operate unconstitutionally to impair the obligation of their contract, and take their property without due process.

We agree with appellants' construction of the statute. We think it plain that its pro rata provision has reference only to bonds serviced by the same levies, payable out of the same funds. It is quite clear that this amendment was not intended to, and that it did not, take away from or give to bondholders "any rights in addition to those that existed under the original Act." We have already so held in another connection in Duval Cattle Co. v. Hemphill (C. C. A.) 41 F.(2d) 433, 438. We agree with them, too, in their view that there is no question of priority here, as there was in Pape's Case, supra, and in Krietmeyer's. In Pape's Case we had occasion to examine a priority claim advanced in connection with the bonds of a navigation district, serviced by ad valorem taxes on all lands in it. We held there that between issues of bonds serviced by the exercise of an inexhaustible taxing power there was no priority. In Krietmeyer's Case, too, where all the issues were under one plan and serviced by a levy upon benefits assessed under that plan, we denied priority. The difference between this case and those is obvious. Both of them involved claims of priority between issues of bonds all serviced by levies upon the same source; in Pape's Case, ad valorem upon all the lands of the district; in Krietmeyer's upon the lands in proportion to the benefits assessed. Here there is no question of priority. There are two separate plans; there was a separate assessment of benefits under each plan, and a separate levy of taxes for the bonds of each plan, upon the benefits assessed under that plan. The funds claimed here are not common funds, obtained from a common levy, but distinct funds obtained from separate levies. All that plaintiffs ask here is that the taxes levied, assessed, and collected for and appropriated to their bonds be applied to them. They are entitled to this. These funds are trust funds, for the payment of their bonds. They may not be otherwise applied. Trustees of Internal Imp. Fund v. Bailey, 10 Fla. 112, 81 Am. Dec. 194; *Hidalgo County Road District v. Morey* (C. C. A.) 74 F.(2d) 101; Puget

---

[2] Section 1493. "If any bond or interest coupon * * * is not paid within sixty days after its maturity, a court of competent jurisdiction * * * may appoint a receiver for the district; * * * and the proceeds of taxes collected by the receiver shall be applied after payment of costs, first to overdue interest, and then to payment pro rata of all bonds issued by the said district which are then due and payable."

Sound Power & Light Co. v. City of Seattle (D. C.) 271 F. 958; Union Pac. R. Co. v. Chicago, R. I. & P. R. Co., 163 U. S. 564, 16 S. Ct. 1173, 41 L. Ed. 265; Clearwater v. State, 108 Fla. 623, 147 So. 459; Pape v. St. Lucie Inlet District, supra.

The decree is reversed, and the cause remanded for further and not inconsistent proceedings.