CONNERS et al. v. FEDERAL DEPOSIT
INS. CORPORATION.

No. 1033.

District Court, E. D. Pennsylvania.
July 9, 1941.

Ralph W. Barthold, of Bethlehem, Pa., and Allen S. Olmsted, 2d, of Philadelphia, Pa. (Francis C. Brown, of Washington, D. C., of counsel), for Federal Deposit Ins. Corporation.

KALODNER, District Judge.

This case involves the question of the removal of causes from State to Federal courts.

The facts are as follows:

The original proceeding in this matter was instituted by the substituted trustees of the E. P. Wilbur Trust Company Mortgage Certificate Pool (hereinafter designated as Pool) in the Court of Common Pleas of Northampton County, Pennsylvania, to determine the present owners of the undivided interest in the Pool, the amount of interest of each such participant, and the priorities or subordinations, if any, among participants.

It appears that prior to its closing by the State Secretary of Banking, the E. P. Wilbur Trust Company of Bethlehem, Pennsylvania, maintained the Pool. It had issued and outstanding Series "A" guaranteed certificates (as to principal and interest) in the original face amount of $1,435,600 and Series "B" unguaranteed certificates in the original face amount of $230,300.

Subsequent to the closing of the Trust Company, various payments were made to the certificate holders by the Secretary of Banking, who had taken possession of the institution, and later by the substituted trustees of the Pool, who had been appointed by the Court of Common Pleas of Northampton County.

Among the holders of certificates to whom distributions were made was the Federal Deposit Insurance Corporation, the respondent in the instant proceeding (hereinafter designated as the F. D. I. C.), which held Series "A" certificates in the original face amount of $14,900 and Series "B" certificates in the original face amount of $173,800. All the certificates had been acquired by the F. D. I. C. from the Trust Company, the immediate prior holder and guarantor of Series "A", on November 16, 1935, which was the last day upon which the Trust Company was open for unrestricted banking business.

Subsequent to the proceeding instituted by the substituted trustees of the Pool in the Northampton County Court on January

H. P. McFadden, of Bethlehem, Pa., for plaintiff.

19, 1940, to determine the ownership, interest, priorities or subordinations, if any, among the participants in the Pool, the State court fixed a hearing for February 6, 1940. At the February 6, 1940, hearing the movants in the instant proceeding, residents of Pennsylvania and holders of Series "A" and Series "B" certificates, filed objections to the participation by the F. D. I. C. in the funds of the Pool upon an equal and unsubordinated basis with the objecting participants and other certificate holders of the same class, on the ground that the F. D. I. C. stood in the shoes, as it were, of the defunct Trust Company, and that the latter, as to the certificates held by it, was subordinated in interest to the rights of the other certificate holders.

On June 6, 1940, during the taking of testimony on the original petition, the movants filed a "Petition Supplemental to Objection to Allow Participation". This supplemental petition stated that the F. D. I. C., being subordinated in interest to other certificate holders, was not entitled to the principal income payments theretofore paid to it, and prayed that the court order the F. D. I. C. to pay over to the trustees of the Pool the sum of $77,933.10 theretofore distributed to it.

Upon the filing of this supplemental petition the F. D. I. C. entered a special appearance in the Northampton County Common Pleas Court and filed a petition for the removal of the action for restitution set forth in the supplemental petition on the ground that it constituted a second cause of action, "separate and distinct" from that asserted by the movants in their original objections at the February 6, 1940, hearing which was concerned with priorities and subordinations in the Pool.

As a result of the F. D. I. C.'s petition for removal the cause was removed to this court, and the movants thereupon filed the instant proceeding to remand back to the State court.

The contentions of the parties in the instant proceeding, briefly summarized, are as follows:

The respondent F. D. I. C. contends that the restitution action embodied in the June 6, 1940 supplemental petition constitutes a "separate and distinct" controversy, removable under the Federal Removal Statute, Section 71, Title 28 U.S.C.A., Section 28 of the Judicial Code.

The movants contend that the restitution proceeding is part and parcel of the administration of the Pool by the court-appointed substituted trustees and not a "separate and distinct" controversy and therefore not removable.

The relevant provisions of the Federal Removal Statute, supra, are as follows: "Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the district courts of the United States are given original jurisdiction, in any State court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district. Any other suit of a civil nature, at law or in equity, of which the district courts of the United States are given jurisdiction, in any State court, may be removed into the district court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that State. And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district."

An examination of the language of the Act leaves much to be desired on the score of clarity. When a suit wholly involves a Federal question, or where there is a complete diversity of citizenship between the plaintiffs on the one side and the defendants on the other, the problem of removal as provided by the Act is relatively simple. The confusion arises: (a) on the removability of a cause at the instance of only some of the defendants; or (b) on the removability of a portion of a cause.

As to these latter two instances, the language of the Act is not altogether clear. The third sentence of the Act, as quoted above, distinguishes between a "controversy" and a "suit" and provides for the removal of a suit when there is a controversy wholly between citizens of different states, at the instance of " * * * one or more of the defendants actually interested in such controversy * * *" and would therefore seem to cover situation (a) in the diversity of citizenship case. The

courts, however, have construed the Act so as to cover both (a) and (b). While the words "separable" and "separate" do not appear in the Act, they have been employed by the courts, and the tests of separability and separateness have frequently been applied in determining removability. Thus we find in Cochran v. Montgomery County, 199 U.S. 260, 271, 26 S.Ct. 58, 61, 50 L. Ed. 182, 4 Ann.Cas. 451, the following statement by Mr. Chief Justice Fuller in discussing the Federal Removal Statute: "Under clause 3, relating to cases of *separable* controversy, and clause 4, all the defendants need not join." (Emphasis supplied.)

The rule that a "separate and distinct" controversy may be removed or "carved out" by the defendant from a suit before a State court was established by the Supreme Court of the United States in the Pacific Railroad Removal Cases, 115 U.S. 1, 5 S. Ct. 1113, 1124, 29 L.Ed. 319. After ruling that corporations of the United States created by and organized under acts of Congress, like the respondent F. D. I. C. in this case, are entitled as such to remove suits brought against them in the State courts into the federal courts, the Supreme Court said: "Now this controversy, involving these three issues, is a distinct controversy between the company and the city. It may be settled in the same trial with the other appeals, and by a single jury; but the controversy is a *distinct and separate* one, and is capable of being tried *distinctly and separately* from the others. * * *" (Emphasis supplied.)

Discussing the Federal Removal Statute and the decision in the Pacific Railroad Removal Cases, the court said in Hammer v. British Type Investors, Inc., D.C., 15 F.Supp. 497, 499: "In a number of decisions, however, the courts have adopted the view that where wholly independent causes of action, some removable and others not removable, are joined in one suit merely to eliminate separate trials, the proceeding is to be regarded as a combination of suits, and each controversy as a 'suit' rather than as a separable controversy. The result has been that in such cases the federal court has taken jurisdiction only of the removable causes of action and has remanded the others."

To the same effect was Rogge v. Michael Del Balso, D.C., 15 F.Supp. 499, 501, in which it was stated: "The rule now rec-ognized in this circuit is to sever the causes of action where they are pleaded as separate and distinct causes of action, retaining those that are removable in character and remanding those that are not within the federal jurisdiction."

See also State Improvement-Development Co., v. Leininger, D.C., 226 F. 884; Lucania Societa Italiana Di Navigazione v. United States Shipping Board Emergency Fleet Corporation, D.C., 15 F.2d 568.

■ The character of the cases dealing with removability is always open to examination to determine whether, ratione materia, the courts of the United States are competent to take jurisdiction, or if the relief sought by the removal is merely incidental; but where the federal courts are properly appealed to in cases where they are invested with jurisdiction, they are duty-bound to exercise this jurisdiction and are without power to remand: Commonwealth Trust Company of Pittsburgh, et al. v. Bradford, Receiver, 297 U.S. 613, 618, 56 S.Ct. 600, 80 L.Ed. 920; Kline v. Burke Construction Company, 260 U.S. 226, 234, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; McClellan v. Carland, 217 U.S. 268, 281, 30 S.Ct. 501, 54 L.Ed. 762; Willcox v. Consolidated Gas Co., 212 U.S. 19, 29 S.Ct. 192, 53 L.Ed. 382, 48 L.R.A., N.S., 1134, 15 Ann.Cas. 1034; In re Chicago, M., St. P. & P. R. Co. et al., D.C., 50 F.2d 430; Everglades Drainage Dist. et al. v. Florida Ranch & Dairy Corp., 5 Cir., 74 F.2d 914; American Automobile Insurance Co. v. Freundt et al., 7 Cir., 103 F.2d 613.

■ It is well settled that controversies arising in an in rem proceeding in a State court are not removable where the removal would interfere with the court's exclusive jurisdiction of the res; for example, a proceeding to probate a will is not removable not only because the federal courts have no jurisdiction with respect to the administration of decedents' estates but because they may not by removal interfere with the State in an in rem proceeding: Byers v. McAuley, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867.

As was stated in Byrd-Frost, Inc., v. Elder, 5 Cir., 93 F.2d 30, 31, 32, 115 A.L.R. 342 (certiorari denied 303 U.S. 647, 58 S. Ct. 646, 82 L.Ed. 1108): "The last-quoted rule, however, is limited to actions which

deal either actually or potentially with specific property or objects. Where a suit is strictly in personam, nothing more than a money judgment being sought, there is no objection to a concurrent action in another jurisdiction, although the same issues are being tried. Stanton v. Embrey, 93 U.S. 548, 23 L.Ed. 983; Gordon v. Gilfoil, 99 U.S. 168, 169, 25 L.Ed. 383."

In the instant proceeding it is clear that the so-called "Petition Supplemental to Objection to Allow Participation", seeking recovery or restitution of the distributions already paid to the respondent F. D. I. C., is plainly a separate and distinct action in personam against the F. D. I. C., wholly independent of the action involved in the original proceeding instituted by the Pool trustees in the State court to determine the owners of the undivided interest in the Pool, the amount of interest of each participant, and the priorities and subordinations, if any, among the participants.

The action for restitution embodied in the "Petition Supplemental, etc." could have been started by a separate and distinct suit in the State court. The fact that the "Petition Supplemental, etc." bore the same court and term number as the original petition does not make the two actions a single one. It is the established practice in the State courts to assign the same court and term number even to a new suit if it relates to or grows out of an existing action. Nonetheless, the actions remain separate. Indeed, Paragraph 5 of the "Petition Supplemental, etc." asks the State court to take jurisdiction of the restitution action "in order to avoid a multiplicity of suits and circuity of actions."

Examination of the record in the State court proceedings conclusively establishes the separateness of the actions brought by the movants. After the presentation of the original petition on January 19, 1940, and the "Petition Supplemental, etc." on June 6, 1940, there were before the State court two separate and independent causes of action:

First (under the original petition of January 19, 1940) the determination of the owners of the undivided interest in the Pool, the extent of ownership, and the priorities or subordinations, if any, among the participants; and in this connection, the court had before it the claim of the F. D. I. C. to current and future distributions from the funds or property then held by the Pool trustees;

Second (under the Petition Supplemental, etc. of June 6, 1940) the claim of the petitioners (the movants here) against the F. D. I. C. to recover money alleged to have been theretofore paid by the Secretary of Banking and the Pool trustees under a mistake of law.

Thus, the original action submitted to the State court involved a claim by the F. D. I. C. in the role of a plaintiff to share in money and property held by the Pool trustees—while the second action involved the claim by the petitioners (the movants here) against the F. D. I. C. in the role of a defendant. While the two actions, to some extent, involved the same facts, the proof of all the facts necessary to defeat the first action—the claim of the F. D. I. C. to equal distribution in the current and future distributions out of the funds held by the trustees—would not establish the second action, i. e., the claim for restitution.

While the question of participation and subordination existed in both actions, the second action—the one for restitution—involved the wholly independent question of the right to recover money paid under a mistake of law.

It is apparent that even though the State court had ruled in the original action that the F. D. I. C. was not entitled to share equally and ratably in current and future dividends, on the ground that it was subordinated in interest to the claims of the other participants in the Pool, such decision would not be res adjudicata of the second action—the restitution suit.

The distinction between the right of a petitioner to restrain the future collection of a fund and his right to recover that which he had previously paid, was drawn by the Supreme Court of Pennsylvania in the case of Wilson v. Philadelphia School District, 328 Pa. 225, 195 A. 90, 113 A.L.R. 1401. In the latter case, Common Pleas Court No. 2 of Philadelphia, of which the writer of this opinion was then a member, held that the taxing sections of the Pennsylvania School Code, 24 P.S.Pa. § 1 et seq., and its amendments were unconstitutional, and restrained the School District from levying and collecting taxes for the year 1938 and subsequent years. As a result of the ruling, a number of tax-

payers brought suits to recover school taxes which they had paid in the past. The Supreme Court of Pennsylvania, in sustaining the lower court's ruling that the taxing sections of the School Code were unconstitutional, at the same time held that taxpayers who had paid the illegally imposed taxes for prior years could not recover the sums paid. Said the Supreme Court (328 Pa. page 243, 195 A. page 100, 113 A.L.R. 1401): "It has been brought to our attention that the decision rendered by the court below has resulted in the institution of suits by taxpayers to recover the school taxes which they have paid in the past and which were levied by the school board illegally under the unconstitutional statutory provision. This court has uniformly adhered to the well-established rule that 'money voluntarily paid on a claim of right, where there has been no mistake of fact, cannot be recovered back on the ground that the party supposed he was bound in law to pay it when in truth he was not.' Union Ins. Co. v. City of Allegheny, 101 Pa. 250, 255."

That money voluntarily paid under a mistake of law where there has been no mistake of fact cannot be recovered was held in Gulf Refining Co. v. City of Philadelphia, D.C., 31 F.Supp. 587.

The above discussion is not to be considered as a determination of the issue of restitution involved here; it is intended only to demonstrate the separateness of the actions before the State court.

■ The question is not before me as to whether or not the original action was removable, since the motion to remand embraces only the restitution proceeding. It is well settled that a cause not removable when commenced may become removable by the voluntary act of the plaintiff, such as by amending his pleadings so as to change the nature of the cause of action: Fritzlen v. Boatmen's Bank, 212 U.S. 364, 29 S.Ct. 366, 53 L.Ed. 551. Moreover, the plaintiff cannot, by joining several causes of action under State statutes or State court rules, estop the defendant from removing an action to the federal courts: Stewart v. Nebraska Tire & Rubber Co., 8 Cir., 39 F.2d 309 (certiorari denied 282 U.S. 840, 51 S.Ct. 21, 75 L.Ed. 746); Young v. Southern Pac. Co., 2 Cir., 15 F.2d 280.

■ The single question remains as to whether, under the comity rule, this court should not relegate the entire proceeding to the State court. While it is true that it might be more convenient to have the entire controversy, both as to the right of future dividends and the restitution of past dividends, determined by the one State court, the respondent F. D. I. C. has asserted a right granted to it under the Constitution and the Acts of Congress, which right it cannot be denied. The decision of the Supreme Court of the United States, in Commonwealth Trust Co. of Pittsburgh, et al. v. Bradford, Receiver, supra, is dispositive of the issue of comity. In that case the receiver of a national bank relinquished control of a mortgage pool and consented to the appointment of a substituted trustee by the Orphans' Court of Pennsylvania. The substituted trustee refused to make distribution to the national bank receiver, and the latter instituted proceedings in the federal courts against the substituted trustee of the pool for an adjudication of his rights. Ruling that the property in the possession of a trustee is not in custodia legis as is property in the possession of a receiver, the Supreme Court said (297 U.S. pages 618, 619, 620, 56 S.Ct. page 601, 80 L.Ed. 920):

"The original bill revealed that the receiver had been denied participation as a cestui que trust in the assets held by petitioner trust company, and asked an adjudication of his rights therein. He did not seek direct interference with possession or control of the assets; he prayed that his right to partake thereof be determined. The claim was an equitable one, within the ordinary jurisdiction of the chancellor. 'In all cases in which an action of account would be the proper remedy at law, and in all cases where a trustee is a party, the jurisdiction of a court of equity is undoubted. It is the appropriate tribunal.' Fowle v. Lawrason's Executor, 5 Pet. 495, 503, 8 L.Ed. 204; Clews v. Jamieson, 182 U.S. 461, 479, 480, 21 S.Ct. 845, 45 L.Ed. 1183; Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192.

"Jurisdiction having been properly invoked, it became the duty of the trial court to determine the issues, unless required by rules based on comity to relegate the complainant to the State court. This

may not be done except in special and peculiar circumstances not revealed, we think, by the present record. McClellan v. Carland, 217 U.S. 268, 281, 30 S.Ct. 501, 504, 54 L.Ed. 762, held:

" 'It therefore appeared upon the record presented to the circuit court of appeals that the circuit court had practically abandoned its jurisdiction over a case of which it had cognizance, and turned the matter over for adjudication to the state court. This it has been steadily held, a Federal court may not do. Chicot County v. Sherwood, 148 U.S. 529, 534, 13 S.Ct. 695, 37 L.Ed. 546, 548.' See, also, Kline v. Burke Construction Co., 260 U.S. 226, 234, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077.

"The trust here involved was created by The Bank's voluntary action, not by the orphans' court. Whatever control the latter possessed resulted solely from appointment of the successor trustee and, for present purposes did not materially differ from that exercised by probate courts over such fiduciaries as guardians, administrators, executors, etc. *The jurisdiction of federal courts to entertain suits against the latter is clear, when instituted in order to determine the validity of claims against the estate or claimants' interests therein. Such proceedings are not in rem; they seek only to establish rights; judgments therein do not deal with the property and order distribution; they adjudicate questions which precede distribution.* Byers v. McAuley, 149 U.S. 608, 620, 13 S.Ct. 906, 37 L.Ed. 867; Security Trust Co. v. Black River National Bank, 187 U.S. 211, 227, 23 S.Ct. 52, 47 L.Ed. 147; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 43, 30 S.Ct. 10, 54 L.Ed. 80; Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 73 L.Ed. 669; Harrison v. Moncravie [10 Cir.], 264 F. 776, 799. Property in its [the trustee's] possession is not in custodia legis as in case of receivers. Hinkley v. Art Students' League, [4 Cir.], 37 F.(2d) 225, 226; Appeal of Hall, 112 Pa. 42, 54, 3 A. 783; Strouse v. Lawrence, 160 Pa. 421, 425, 28 A. 930; Goodwin v. Colwell, 213 Pa. 614, 616, 63 A. 363; Nevitt v. Woodburn, 190 Ill. 283, 289, 60 N.E. 500.

"The trial court properly exercised the jurisdiction which it acquired. The doctrine approved in Pennsylvania v. Williams [294 U.S. 176, 55 S.Ct. 380, 79 L. Ed. 841, 96 A.L.R. 1166], and Penn General Casualty Co. v. Pennsylvania, supra, [294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850], is not applicable. In each of those cases we found conflict between the federal court and authorities of the state concerning liquidation of the business and assets of an insolvent local corporation. The question was whether, under the peculiar circumstances disclosed, the federal court should retain jurisdiction; its power generally to render judgment in personam against fiduciaries appointed by state courts was expressly recognized. Here there are no extraordinary circumstances. As contemplated by Congress the receiver sought an adjudication of his rights. The final decree produced no interference with the trustee's possession, nor with the power of the orphans' court to order distribution of assets. The receiver's privilege to participate has been declared; only a judgment in personam was rendered.

"Congress has empowered receivers of national banks to sue in federal courts; the obvious importance of permitting them freely to do so cannot be disregarded." (Emphasis supplied.)

To the same effect was General Baking Co. v. Harr, Secretary of Banking of Pennsylvania et al., 300 U.S. 433, 57 S.Ct. 540, 81 L.Ed. 730.

It is clear in this case that no effort is being made by the respondent F. D. I. C. to affect the control of the State court over the trust res, and the determination of the restitution action is not in any way dependent upon the possession of the res.

Contention was made by the movants in this case that the respondent F. D. I. C. was precluded from removing this cause to the federal court by reason of having participated in the proceedings in the State court with respect to future dividends. This contention is without merit. The fact that the respondent has submitted to the jurisdiction of the State court the issue of its right to future dividends did not prevent it from removing to the federal court the action against it to recover past dividends already received, where it took prompt action as soon as the new issue was presented, as was done by the respondent F. D. I. C. in the instant proceeding.

I am in agreement with the contention of the respondent that the question here is

closely analogous to the question of whether by filing a claim in bankruptcy proceedings, a claimant subjects himself to summary jurisdiction of the bankruptcy court as to property held by him adversely to the bankrupt estate. The courts have consistently held that summary jurisdiction cannot be predicated upon such action. As was stated in the case of In re Vadner, 9 Cir., 17 F.2d 721, 722: "As to the contention that respondent's testatrix made a general appearance in the case, and presented claims for allowance, and opposed other claims, it need only to be said that appearance for such purpose is not a submission for adjudication of the subject-matter of this proceeding. Pickens v. Roy, 187 U.S. 177, 180, 23 S.Ct. 78, 47 L.Ed. 128."

Again, in Thalhimer v. Florance, 4 Cir., 58 F.2d 23, 26, the court stated: "The mere filing against a bankrupt estate of a claim partly secured by a lien upon property in the possession of the claimant does not signify his consent to a determination of his right to the security by summary proceeding in the bankruptcy court. Such an action does manifest a desire to share in the assets of the estate with respect to so much of the claim as is unsecured, and it assumes that the creditor's right to the security will be respected; but it does not evidence an intent to submit the title to the security, if denied, to the determination of the court. * * *"

In City National Bank of Wichita Falls v. Wichita Royalty Co., D.C., 18 F. Supp. 609, a national bank began a suit in a State court for the appointment of a receiver for a corporation. It was held that upon filing of a cross-claim the bank could remove to the federal court. The decision of the District Court was affirmed in 5 Cir., 95 F.2d 671.

Similarly, in Henderson v. Midwest Refining Co., 10 Cir., 43 F.2d 23, the court point out that submission to the jurisdiction of the State court on matters set forth in an original bill of complaint did not operate to prevent removal to the federal court of new matters incorporated in an amended bill of complaint.

Finally, there is no question in this case that the United States courts have original jurisdiction and, therefore, likewise have jurisdiction by removal, in matters affecting the F. D. I. C., under the Act of June 16, 1933, which created it. The Act, 12 U.S.C.A. § 264j(4), provides: "* * * All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States * * *."

For the reasons above stated, the motion to remand is denied.